**Patric D. LITTLE, Petitioner,**

v.

**John T. HADDEN, Warden, Englewood (Colorado) Federal Correctional Institution: United States Parole Commission, Respondents.**

**Civ. A. No. 80–C–165.**

United States District Court,
D. Colorado.

Dec. 24, 1980.

---

Frederick Y. Yu, Yu & Stromberg, Denver, Colo., William J. Skepnek, Linn, Helms, Kirk & Burkett, Oklahoma City, Okl., for petitioner.

Roland J. Brumbaugh, Asst. U. S. Atty., Denver, Colo., for respondents.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

On October 30, 1973, Patric Little returned from an evening of drinking and socializing with several friends, entered his home in Washington, D.C., and shortly thereafter killed his wife. The physical circumstances of the killing were such that the sentencing judge described the case as one of the most brutal he had seen. Little, who at the time was an attorney working with the Department of Housing and Urban Development in Washington, was convicted of manslaughter while armed and sentenced in 1975 to a prison term of from 4 to 25 years. On May 10, 1977, the sentencing judge modified the sentence to a term of from 2 to 15 years. As the sentencing judge indicated in his 1977 order, Little on that date became immediately eligible for parole. Despite the brutality of the homicide, the manslaughter conviction and the relatively short sentence reflected the fact that Little, at the time of the crime, had recently been subjected to a series of incredibly severe emotional hardships, including the death of two sons in a fire, which at the very least diminished his mental capacity.

The present case arises from Little's petition for writ of habeas corpus challenging the United States Parole Commission's decision to continue his confinement until the expiration of his term. Little, contending that the Commission has acted arbitrarily and capriciously and has abused its discretion, seeks immediate release on parole.

Some background discussion of Little's progress through the administrative channels is necessary. His sentence was modified in 1977, as noted above, at least partially because by then he had been through approximately 41 months of psychiatric

therapy after the crime. He had received a virtually unanimous and unequivocal clean bill of mental health from those who had treated him and analyzed his progress.

Although he became immediately eligible for parole when his sentence was modified on May 10, 1977, his first parole hearing was not held until July 25, 1979. Evidence was presented to the hearing panel at the Federal Correctional Institution (FCI) in El Reno, Oklahoma, where Little was incarcerated. The evidence detailed the nature and severity of Little's crime, his institutional record, and his response to psychiatric treatment. Based on the evidence, the panel recommended an effective parole date of October 24, 1979, i. e., three months after the parole hearing.

This initial decision apparently followed rather closely parole commission guidelines for terms of confinement, which will be discussed in more detail below. Under these guidelines, manslaughter was rated as a "Greatest I" offense in severity. As applied to a prisoner with Little's salient factor score of 10, the guidelines indicated that 40 to 52 months should be served in confinement. See 28 C.F.R. section 2.20. As of July 25, 1979, Little already had served approximately 52 months. The guidelines, therefore, indicated that release would be appropriate.

By a Notice of Action dated August 13, 1979, however, the Commissioner for the South Central Regional reversed the panel's recommendation. The Commissioner increased the offense severity rating to Greatest II, which under the guidelines left the term of confinement open-ended. Finding that release on parole would "depreciate the seriousness" of the offense, the Commissioner ordered Little to be continued in confinement until expiration of his sentence.

Little then appealed to the Commission's National Appeals Board, which affirmed the South Central Commissioner's decision without further comment.

The instant action was filed February 6, 1980. Thereafter, the Commission's general counsel reviewed the case and determined that a Greatest II severity rating was not warranted. This Court, at the request of the Commission, then held this action in abeyance to permit Little's case to be reconsidered.

On March 24, 1980, a special parole hearing was held at the FCI in Englewood, Colorado, to which Little had by then been transferred. The Special Review Panel reduced the offense severity rating to Greatest I, but orally informed Little that they would recommend continued confinement for an additional 24 months from the hearing date.

The Special Review Panel's decision was referred directly to the National Commissioners for review. By Notice of Action dated April 17, 1980, the National Commissioners affirmed severity classification of the offense as Greatest I, but decided that Little would be continued in custody until expiration of his sentence. (The stated reasons for that decision are discussed in detail below.)

Little then filed an amended petition in this action, challenging this modified final order of the National Commissioners.[1] The issues have been fully briefed and argued, a complete record of the proceedings below has been filed, and a limited evidentiary hearing has been conducted. The Court is now prepared to rule on the merits of Little's Amended Petition.

---

[1] The Commission has rather half-heartedly asserted that Little has failed to exhaust his administrative remedies because the April 17 decision was not made by the full Commission sitting as the National Appeals Board. The Commission does not assert that exercise of the technical right of further appeal would make any difference. Moreover, the report filed in this Court with the April 17 Notice of Action indicated, apparently by mistake, that the decision *had* come from the National Appeals Board. Given this misleading notice, together with the almost conceded futility of any further appeal, this Court will exercise its discretion not to require further exhaustion. Such treatment is especially appropriate here because the petitioner has already once appealed through the highest administrative appeal available.

"The standard of review of action by the Parole Commission is whether the decision is arbitrary and capricious or is an abuse of discretion." *Dye v. United States Parole Comm.*, 558 F.2d 1376, 1378 (10th Cir. 1977). It is not the function of the courts to review the merits of the Commission's decision, or to repass on the credibility of reports or other evidence considered by the Commission in making its decision. *Id.* Moreover, since the Court's review is limited to a determination whether the Commission acted arbitrarily and capriciously or abused its discretion *based on the record before the Commission*, this Court cannot consider new evidence and make a *de novo* redetermination of the parole decision. Therefore the instant decision is based solely on the record of the proceedings before the Commission, and no new evidence presented to the Court has been considered.[2]

The Parole Commission's discretion is defined and delimited by the Parole Commission and Reorganization Act, 18 U.S.C. sections 4201, *et seq.* and regulations promulgated thereunder. Of particular relevance here is section 4206, which provides in part as follows:

"(a) If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines:

(1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and

(2) that release would not jeopardize the public welfare; subject to the provisions of subsections (b) and (c) of this section, and pursuant to guidelines promulgated by the Commission pursuant to section 4203(1)(1) [18 USCS § 4203(a)(1)], such prisoner shall be released.

\*　　\*　　\*　　\*　　\*　　\*

(c) The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing: Provided, That the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon."

In addition, the Commission has promulgated guidelines for parole decisions, published at 20 C.F.R. section 2.20. That section provides, in pertinent part:

"§ 2.20 Paroling policy guidelines; statement of general policy.

(a) To establish a national paroling policy, promote a more consistent exercise of discretion, and enable fairer and more equitable decision-making without removing individual case consideration, the United States Parole Commission has adopted guidelines for parole consideration.

(b) These guidelines indicate the customary range of time to be served before release for various combinations of offense (severity) and offender (parole prognosis) characteristics. The time ranges specified by the guidelines are established specifically for cases with good institutional adjustment and program progress.

(c) These time ranges are merely guidelines. Where the circumstances warrant, decisions outside of the guidelines (either above or below) may be rendered.

(d) The guidelines contain examples of offense behaviors for each severity level. However, especially mitigating or aggravating circumstances in a particular case may justify a decision or a severity rating different from that listed.

(e) An evaluation sheet containing a "salient factor score" serves as an aid in determining the parole prognosis (potential risk of parole violation). However,

---

2. For all practical purposes, consideration of the testimony presented directly to this Court would make little difference, since both witnesses acknowledged that everything they testified to in this proceeding was also presented to the Commission.

where circumstances warrant, clinical evaluation of risk may override this predictive aid."

Section 2.20 then goes on to set out a table indicating the guidelines for confinement periods based on the two stated factors, offense severity and offender characteristics.

In this case, the Commission now concedes that the crime for which Little was convicted and sentenced falls within the Greatest I category for offense severity. The Commission also acknowledges that Little's salient factor score is 10, placing him within the "very good" range for offender characteristics, *i. e.*, giving Little a "very good" parole prognosis. This latter rating, it might be noted, is amply, indeed unanimously supported by every psychiatric report, every caseworker study, and every other evaluation in the record presented to this Court for review. The experts who have considered Little's case agree that following the 41 months of treatment he had overcome the mental problems which led him to commit the crime, and that he would pose no threat to society if released. It quite clearly appears from the record that Little would not have committed this crime but for his mental illness, and that that illness has now been successfully treated. This fact is not disputed by the Commission.

Under the guidelines set forth in 28 C.F.R. section 2.20, then, the recommended period of confinement for a person convicted of a Greatest I offense, with a salient factor score of 10, is from 40 to 52 months. Little has now served 69 months. Nonetheless, the Commission has determined that confinement should extend even further beyond the guidelines. With "statutory good time," the Commission estimates that Little would be released after approximately five more years in confinement. If that were the case, Little's confinement period would be nearly two and one-half times the maximum recommended by the guidelines.

While the standard for reviewing the Commission's decision is quite narrow, it is well-established that a decision " 'cannot stand when it is shown to be based on a reason that is outside the scope of statutory authority.' *Battle v. Norton*, 365 F.Supp. 925, 928 (D.Conn.1973)." *Brach v. Nelson*, 472 F.Supp. 569, 575 (D.Conn.1979). Admittedly, the Commission is not bound by its published guidelines, and it may depart from them "if it determines there is good cause for so doing." 18 U.S.C. section 4206(c). Nonetheless, "good cause" may not be established by basing a decision on a reason outside the scope of the Commission's authority.

Moreover, "where a parole applicant is continued above the guideline period, courts have required the Commission to give reasons beyond those covered by the salient factor score and offense severity rating." *Brach v. Nelson*, 472 F.Supp. at 474. "It is simply irrational for seriousness of the offense to be used first to determine the appropriate guideline period and then to be used again as the stated reason for confining a prisoner beyond that guideline." *Id., quoting Lupo v. Norton*, 371 F.Supp. 156, 163 (D.Conn.1974).

The Commission's attempt to state "good cause" in this case is contained in its Notice of Action dated April 17, 1980. That Notice, since it is critical to this case, bears quoting at length:

"Your offense behavior has been rated as Greatest I severity because you committed the offense in a state of diminished mental capacity and under considerable emotional disturbance. You have a salient factor score of 10. You have been in custody a total of 60 months. Guidelines established by the Commission for adult cases which consider the above factors indicate a range of 40–52 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, *a decision above the guidelines appears warranted because while you initially attacked your wife in an apparently spontaneous reaction to the emotional pressures that clouded your mind at the time, her death was actually caused by a second brutal assault after your initial attack*

*had abated and following the victim's appeal to you for help. The offense is greatly aggravated by an inconceivable lack of human pity for your victim at a point when such a reaction ought to have been aroused. The Commission does not consider that the environmental pressures under which you were suffering were strong enough to account for your failure to control the tide of your feelings at that point,* particularly in view of the facts that there had been no quarrel or any element of provocation on the victim's part. Your inability in this regard appears to have been as much the result of a total absorption in your own self and problems for which you alone were ultimately responsible, as it was a response to environmental pressures. *Thus, it is the remorseless nature of your crime that warrants it to be an extremely aggravated manslaughter."* (Emphasis added.)

After careful and repeated review of this statement of reasons, and the record upon which it is purportedly based, this Court is firmly convinced that the Commission has in this case exceeded the bounds of its lawful authority in continuing Little in confinement. Moreover, the Court is persuaded that the record permits no other rational decision than that immediate release is warranted, and therefore that the petition for habeas corpus should be granted.

The first problem with the Commission's attempt to state "good cause" is that there is no basis in the record for the principal rationale of the decision. Normally, in a review of an agency decision based on the administrative record, a court is able to refer to some part of the record as lending at least some support to the agency's decision. Here, however, the agency has made an independent, totally unsupported finding in its Notice of Action. In effect it has found—contrary to overwhelming expert opinion evidence—that the petitioner was not in fact acting with a diminished mental capacity during the entire period the crime was committed. By thus seeking to impose a different—higher—standard of responsibility for the second attack, the Commission in effect seeks to exact punishment for murder on one convicted only of manslaughter.

Specifically, the Commission first correctly acknowledges that Little "committed the offense in a state of diminished mental capacity and under considerable mental disturbance." This is undisputed from the record. It is fully supported by the expert opinion evidence and by the adjudicated fact that Little was only convicted of manslaughter, a "no malice" offense. Nonetheless, the Commission purports to find that *in its view* (a view entirely unsupported by the record) the emotional and mental pressures which initially had "clouded" Little's mind "had abated," and a reaction of human pity "ought to have been aroused." The Commission has made its own independent analysis or diagnosis of the petitioner's mental state at the time of the crime, based solely on its review of the aggravating circumstances, but *not* based on any evidence that supports its conclusion.

From this total lack of evidence to support the Commission's stated reason—that continued confinement is warranted by the "remorseless nature" of the crime—the Court can only conclude that the decision is actually based on some other judgment of the Commission regarding the offense and the need for punishment more severe than that provided for manslaughter, or that intended by the sentencing judge. Unfortunately for the Commissioner's position, Little was convicted and sentenced for manslaughter, not murder. The Commission now concedes that the instant crime falls into the Greatest I category for offense severity. There is an implicit recognition in this categorization that the manslaughter conviction necessarily reflected the fact of Little's diminished mental capacity. Nonetheless, the Commission has made an internally contradictory decision: it has recognized Little's diminished mental state in classifying the offense severity, yet it has refused parole based on its own unsupported perception that, during at least part of the time the crime was being committed, Little's mental state was "not really" that diminished.

In other words, the factors which the Commission relies upon to support its conclusion that this was an "extremely aggravated manslaughter" are totally based on surmise. They seem plainly intended to mask an underlying decision of the Commission that because of the horrible *physical facts* of the case, the crime is more serious than the "ordinary" manslaughter contemplated by the published guidelines. There is no basis in law for such a distinction. The guidelines clearly indicate the class of offense severity into which this case falls, based on the act committed—the killing of another human being—and the mental state of the actor—no legal "malice." The Commission may not make a *de facto* decision that a crime adjudicated as manslaughter, for which the sentencing judge intended to sentence one guilty of manslaughter, was "actually" murder based on its unsupported view of what the petitioner's mental state must have been. Nor may the Commission simply continue the petitioner in custody because the facts of the case are particularly odious, in disregard of the record as to the petitioner's mental state.

As noted above, it is unreasonable and impermissible for the Commission to base a decision to continue beyond the guidelines on the same factors that went into formulating the guidelines in the first place. No one disputes that this was a serious crime, but the factors of seriousness indicated by this record are included in the guidelines themselves. Thus, something more must be stated. The Commission, however, has failed to state any other basis that is supported by any evidence.

It is clear to the Court from the record in this case that the Commission has attempted to continue Little in custody beyond the guidelines because of its *ad hoc* decision regarding the seriousness of the offense, but the factors relied upon are either unsupported by the record or were already considered in formulating the guidelines. Especially in light of the fact that sentencing judges rely on the published guidelines in determining the sentence to be imposed in a particular case, it is an abuse of discretion for the Commission to continue a pris-

oner in confinement *beyond* the guidelines based on factors which the sentencing judge, obviously, must have considered as included in the guidelines when he imposed the sentence.

In short, the Commission's decision is arbitrary and capricious because it is not based on anything in the record before it. Moreover, it reflects an abuse of discretion because it attempts to continue Little's confinement beyond the guidelines without the statutorily required good cause. The Commission's decision, quite frankly, appears to be based solely on punitive considerations, since it completely ignores both the overwhelming evidence of the petitioner's lack of mental control at the time he committed the crime and the unanimous determination by all who have worked on the case that the petitioner has overcome his mental problems and now poses no threat to society. The Commission has been unable in two attempts at the national level to articulate even colorable reasons for its decision, and the record reveals no possible basis for such a decision. Accordingly, it is this Court's determination that the appropriate relief is to grant the petition for writ of habeas corpus and order the Commission to release the petitioner. Accordingly, it is

ORDERED that the petition for writ of habeas corpus is granted, and the respondents are ordered to release the petitioner, Patric D. Little, on parole forthwith.

It is further ORDERED that this order is stayed for twenty days from this date to provide the respondents an opportunity to seek a further stay from the Court of Appeals in the event of an appeal.