John Brett ALLEN, Petitioner,

v.

John T. HADDEN and U.S. Parole Commission, Respondents.

Leon ROBINSON, Petitioner,

v.

John T. HADDEN and U.S. Parole Commission, Respondents.

Civ. A. Nos. 81–K–1863, 81–K–2020.

United States District Court, D. Colorado.

April 6, 1982.

Vicki Mandell-King, Asst. Federal Public Defender, Denver, Colo., for Robinson in No. 81–K–2020.

Scott H. Robinson, Gerash & Robinson, Denver, Colo., for Allen, in No. 81–K–1863.

Charles Torres, Asst. U. S. Atty., Denver, Colo., for respondents in No. 81–K–2020.

Phil Miller, Asst. U. S. Atty., Denver, Colo., for respondents in No. 81–K–1863.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

The petitioners in these two cases each filed petitions for writs of habeas corpus under 28 U.S.C. § 2241. They challenge the defendants' decisions denying them parole. Pursuant to Local Rule 17(f), I referred each case to Magistrate Donald E. Abram, who held hearings and made recommendations. I then held a hearing in each case to hear the petitioner's objections to the magistrate's recommendation. Because the two cases involve many of the same issues, I will consider both in this opinion.

### I. BACKGROUND

In *Greenholz v. Inmates of the Nebraska Penal and Correction Complex*, 442 U.S. 1, 9–11, 99 S.Ct. 2100, 2104–2105, 60 L.Ed.2d 668 (1979), the U. S. Supreme Court considered a state parole system. The court noted that a parole-release decision "depends on an amalgam of elements, some of which are factual but many of which are

purely subjective appraisals by the Board members ..." *Id.* at 10, 99 S.Ct. at 2105. The court also noted that many of the liberty interests at stake in a parole-revocation decision are not present in a parole-release decision, and apparently concluded that there is no due-process guarantees regarding parole release, unless such a right is guaranteed by the state.

In *United States v. Addonizio,* 442 U.S. 178, 190, 99 S.Ct. 2235, 2243, 60 L.Ed.2d 805 (1979), the court considered a parole decision regarding a federal prisoner, and held a sentencing judge "has no enforceable expectations with respect to the actual release of a sentenced defendant short of his statutory term." The actual decision, the court concluded, is up to the Parole Commission.

In spite of this lack of constitutional guarantees, the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), directs reviewing courts to set aside federal agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." The Tenth Circuit has stated that this is the standard that courts should apply when reviewing actions of the U.S. Parole Commission. *United States v. Talk,* 597 F.2d 249, 251 (10th Cir. 1979); *Dye v. U.S. Parole Commission,* 558 F.2d 1376, 1378 (10th Cir. 1977). In *Rumfelt v. United States,* No. 76–1708 (10th Cir. Dec. 17, 1976) (not for routine publication), Slip Op. 3, the court stated:

> the district court's inquiry is whether the reasons given for the Board's action are adequate and whether the information relied on by the Board was sufficient to provide a factual basis for these reasons.

18 U.S.C. § 4205(b) provides sentencing judges with an alternative. Under (1) the judge may specify a minimum term, which must be less than one-third of the maximum allowable sentence, after which the defendant shall be eligible for parole. Under (2) the judge specifies a maximum term, allowing the parole commission to determine the parole date, which under section 4205(a) is normally after at least one-third of the sentence.

18 U.S.C. § 4203(b) grants the Parole Commission broad powers to grant and delineate parole conditions. Section 4203(a)(1) directs the commission to promulgate rules establishing guidelines for carrying out its parole decisions.

18 U.S.C. § 4206(a) provides that if release would not depreciate the seriousness of the offense or jeopardize the public welfare, then, pursuant to the guidelines, the commission may release a prisoner on parole. Section 4206(c) provides that the commission may grant or deny parole outside of the guidelines if it determines that there is good cause for doing so. If it does so, however, then it must give the prisoner written notice of its reasons. See generally *Fronczak v. Warden, El Reno Reformatory,* 553 F.2d 1219, 1220–21 (10th Cir. 1977) (*partially overruled on other grounds, Watts v. Hadden,* 651 F.2d 1354, 1382–83 (10th Cir. 1981)).

The Parole Commission has adopted 28 C.F.R. § 2.20 (1980) as its guidelines for determining when parole should normally be granted. This regulation establishes a grid. One coordinate of the grid, the "salient factor score," attempts to evaluate a prisoner's potential risk of violating parole.[1] The other coordinate is a determination of the severity of the offense.[2] After determining each of these coordinates, the Parole Commission applies the grid to determine the normal amount of time that a prisoner should be confined before being released on parole.

Although the grid furnishes guidelines, the regulations state that decisions outside of the guidelines may be rendered. 28 C.F.R. § 2.20(c). This will be appropriate if there are "especially mitigating or aggravating circumstances in a particular case." *Id.* § 2.20(d). The Tenth Circuit has stated that the parole commission must give a more detailed explanation for its decision

---

1. Salient factor scores range from 0 to 11, eleven reflecting the best parole eligibility.

2. The severity categories are: low, low moderate, moderate, high, very high, greatest I, and greatest II.

when it is outside of the guidelines. *Fronczak v. Warden*, 553 F.2d at 1221.

18 U.S.C. § 4207 lists the types of information that the Parole Commission may consider in making its decision. This information includes reports and recommendations made by the prison staff, the prisoner's prior criminal record, presentence investigation reports, recommendations of the sentencing judge, examination reports and any other available relevant information. However, by its own regulations, the parole commission does not consider evidence of charges upon which the prisoner was found not guilty, unless there is new evidence that was not introduced at trial. 28 C.F.R. § 2.19(c). The regulations also provide that the commission may rely on disputed information only if it first determines that the information is supported by a preponderance of the evidence. *Id.* Other than these limits, the regulations allow the commission to consider "any substantial information available to it" in applying the grid to determine a prisoner's parole date. See generally *Watts v. Hadden*, 469 F.Supp. 223, 227–29 (D.Colo.1979).

The Tenth Circuit has upheld the parole commission's use of this broad information base. In *Trammel v. United States*, No. 77–1400 (10th Cir. Nov. 1, 1977) (not for routine publication), the court stated:

> Just as a sentencing court may take into consideration a pre-sentence report which incorporates information of a hearsay nature, the Parole Board may take into consideration information which is not necessarily inclusive of trial and conviction.

Slip Op. at 1 (citations omitted). In *Dye v. U.S. Parole Commission*, 558 F.2d 1376, 1379 (10th Cir. 1977), the court elaborated:

> the Commission is entitled to take into account factors which could not for constitutional reasons, be considered by a court of law.

(citing *Mack v. McCune*, 551 F.2d 251 (10th Cir. 1977)). In determining a parole date, the commission may consider evidence of an offense for which the prisoner's conviction was overturned, so long as the reversal was not based on a finding of innocence. *Schuemann v. Colorado State Board of Adult Parole*, 624 F.2d 172, 174 (10th Cir. 1980) (citing *Dye v. United States Parole Commission*, 558 F.2d 1376, 1379 (10th Cir. 1977)). Likewise, the commission may consider allegations of criminal activity for which the prisoner has not even been charged. *Rumfelt v. United States*, No. 76–1708 (10th Cir. Dec. 17, 1976) (not for routine publication), Slip Op. at 4.

## II. SPECIFIC ISSUES IN THESE CASES

### A. Consideration of Dismissed Counts of the Indictment

In keeping with the rule that the parole commission may utilize a broad information base in making its parole determination, most courts have upheld the commission's consideration of offenses charged in counts of the indictment that are later dismissed. See, e.g., *Billiteri v. U. S. Board of Parole*, 541 F.2d 938, 944 (2d Cir. 1976); *Narvaiz v. Day*, 444 F.Supp. 36, 37–38 (W.D.Okla. 1977); *McArthur v. U. S. Board of Parole*, 434 F.Supp. 163, 166–67 (S.D.Ind.1976), *aff'd. mem.*, 559 F.2d 1226 (7th Cir. 1977); *Manos v. U. S. Board of Parole*, 399 F.Supp. 1103, 1105 (M.D.Pa.1975); *Lupo v. Norton*, 371 F.Supp. 156, 161–62 (D.Conn.1974).

A few courts, however, have objected to this practice because it allows what is often the most important determination, the defendant's actual period of incarceration, to be determined by the parole commission, rather than at a trial where all of the defendant's constitutional safeguards are present. For example, in *Pernetti v. United States*, 21 Crim.L.Rep. 2033 (D.N.J. Mar. 3, 1977), *appeal dismissed as moot*, 605 F.2d 1196 (3d Cir. 1979), the court held that the parole commission's consideration of offenses alleged in dismissed counts of the indictment denied the defendant due process.

The court stated:

> The major premise underlying this Court's opinion is the firmly established judicial maxim that a person is innocent until proven guilty.

Based on the foregoing reasoning, then, it can be readily concluded that a plea of not guilty to, or a dismissal of, a count or counts of an indictment would have the opposite effect of a plea of guilty; there would be no waiver of a trial wherein the allegations would have to be proven beyond a reasonable doubt. It logically follows that if, as a result of a dismissal, the defendant is not subject to a judgment of conviction or an imposition of sentence because none of the allegations has been proven or admitted to, the parole board should not be allowed to base any parole eligibility determinations on the unproven allegations contained in the count or counts dismissed.

21 Crim.L.Rep. at 2034. Similarly, in *Wixom v. United States*, 585 F.2d 920, 921 (8th Cir. 1978), the court stated in dictum, without any elaboration:

> it would be inappropriate for the Parole Commission to consider any of the objected to information [relating to unadjudicated conduct] in determining the length of time that the defendant will be required to serve under the guidelines established by the United States Parole Commission.[3]

In *Watts v. Hadden*, 469 F.Supp. 223, 233 (D.Colo.1979), Judge Matsch of this court considered this problem. Although the case was under the Federal Youth Corrections Act, his comments are equally applicable to the present case:

> A somewhat collateral question has arisen in these proceedings, and because it raises concerns which are of constitutional proportions, it is necessary to comment. The use of information concerning offense severity or behavior characteristics which have not been tested through any adjudicative procedures presents a question of a possible violation of the inmates' procedural due process protection under the Fifth Amendment to the United States Constitution. To provide carefully constructed procedures for reaching the question of guilt or innocence of charged offenses and to ignore such protections with respect to information used for classification as to type of confinement, place of confinement, and duration of confinement is incongruous. As I understand this record, the most cautiously constructed plea agreement can be circumvented by the simple expedient of giving the Parole Commission information which it considers credible. Providing the inmate with a summary of that information but without an adequate opportunity to challenge its accuracy is scant protection and it is difficult to see how an inmate so affected can be convinced of the fairness of the system which controls his liberty.

■ As Judge Matsch noted, the problem of the parole commission considering dismissed counts is compounded when it may circumvent a plea agreement. Whenever the prosecutor makes a promise that induces a guilty plea, the government then must fulfill that promise. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). If it does not, then the trial court must conduct further proceedings, either requiring the government to keep its agreement, or allowing the defendant to withdraw his pleas. *Id.* at 263, 92 S.Ct. at 499; *Stone v. Cardwell*, 575 F.2d 724, 726 (9th Cir. 1978).

■ F.R.Crim.P. 11(e)(1) authorizes the government to enter into an agreement with the defendant where, in return for a guilty plea, the government will either drop other charges or make recommendations or refrain from making recommendations on sentencing.[4] The rule requires the defend-

---

**3.** Both *Pernetti* and *Wixom* were decided before the U.S. Supreme Court's decision in *Greenholtz v. Inmates of the Nebraska Penal and Correction Complex*, 442 U.S. 1, 11, 99 S.Ct. 2100, 2105, 60 L.Ed.2d 668 (1979), which held that a prisoner has no due-process rights in a state parole system that "provides no more than a mere hope" that parole will be granted.

Because the detailed statutory and regulatory procedures of the federal parole system provide more than a "mere hope," the *Greenholtz* decision is not directly applicable to *Pernetti* and *Wixom*.

**4.** See generally *United States v. Griffin*, 462 F.Supp. 928, 929 n.2 (E.D.Ark.1978) (illustrat-

ant to understand that sentencing recommendations are not binding on the court. The rule does not authorize the government to include parole recommendations in plea bargains.

If the government does make an express or implied promise regarding parole which induces a guilty plea, *Santobello* clearly requires the parole commission to abide by that promise.[5] A more difficult question arises when a defendant pleads guilty to some counts in return for dismissal of other counts, and where he falsely assumes that the offenses charged in the dismissed counts will not be used in making his parole determination.

F.R.Crim.P. 11(c)(1) requires a trial judge to advise a defendant of any mandatory minimum penalty and the maximum possible penalty that may be imposed before accepting a plea of guilty to that offense. In *United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979), the court held that a trial judge's failure to advise a defendant of a mandatory special parole term violated F.R.Crim.P. 11. However, the court concluded that where the violation was only "technical," and did not result in a "complete miscarriage of justice," the defendant was not entitled to withdraw his guilty plea. *Id.* at 784–85, 99 S.Ct. at 2087–2088 (quoting *Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)). Consistent with this holding, several Tenth Circuit cases have held that a defendant is not entitled to withdraw his guilty plea when the trial judge failed to comply with Rule 11 if the sentence and parole term actually imposed did not exceed that which the judge had told the defendant was the maximum. See, e.g., *United States v. Sisneros*, 599 F.2d 946, 949 (10th

Cir. 1979); *United States v. Eaton*, 579 F.2d 1181, 1182–83 (10th Cir. 1978); *Evers v. United States*, 579 F.2d 71 (10th Cir. 1978), *cert. denied*, 440 U.S. 924, 99 S.Ct. 1253, 59 L.Ed.2d 478 (1979); *United States v. Hamilton*, 553 F.2d 63, 65–66 (10th Cir.), *cert. denied*, 434 U.S. 834, 98 S.Ct. 122, 54 L.Ed.2d 96 (1977). Cf. *United States v. McCoy*, 573 F.2d 14, 17 (10th Cir.), *cert. denied*, 436 U.S. 958, 98 S.Ct. 3073, 57 L.Ed.2d 1123 (1978).

If a defendant will be ineligible for parole after pleading guilty, the Tenth Circuit has held that the trial judge must so advise the defendant before accepting the guilty plea. *Barber v. United States*, 456 F.2d 164, 165 (10th Cir.), *cert. denied*, 409 U.S. 869, 93 S.Ct. 168, 34 L.Ed.2d 118 (1972); *Jenkins v. United States*, 420 F.2d 433, 437 (10th Cir. 1970). The *Jenkins* opinion stated:

> The averments are that Jenkins was not advised by the court or counsel, and did not know, that a conviction for the narcotics sale violations charged would make him ineligible for probation or parole. Such circumstances we deem a practical consequence of the plea which could not be dismissed as irrelevant as a matter of law. . . . The practical effect of the loss of probation and parole is ' * * * so powerful that it translates the term imposed by the sentencing judge into a mandate of actual imprisonment for a period of time three times as long as that ordinarily expected.' We conclude that such an effect is, within the meaning of the rule, a consequence of the plea to be carefully considered.

*Id.* at 437 (citations and footnotes omitted). See also *United States v. Bronson*, 449 F.2d 302, 306 (10th Cir. 1971), *cert. denied*, 405

---

ing that a defendant often receives little, if any, bargain from such plea agreements).

5. Cf. *United States ex. rel. Goldberg v. Warden, Allenwood Federal Prison Camp*, 622 F.2d 60, 64–65 (3d Cir.) *cert. denied*, 449 U.S. 871, 101 S.Ct. 210, 66 L.Ed.2d 91 (1980). In this case the Third Circuit upheld the parole commission's subsequent consideration of offenses charged in counts of the indictment that had been dismissed "with prejudice" pursuant to a

plea agreement. The court emphasized that the plea agreement did not in any way link the dismissal "with prejudice" to the question of parole, nor did the agreement restrict the scope of the presentence report. *Id.* at 64. See also *Bistram v. U.S. Parole Board*, 535 F.2d 329, 330 (5th Cir. 1976) (upholding parole commission's consideration of offense charged in indictment count that was dismissed pursuant to a plea agreement).

U.S. 994, 92 S.Ct. 1268, 31 L.Ed.2d 463 (1972) ("the practical impact on the defendant [of the possibility of parole] is the important consideration [in determining whether the defendant received adequate information before making a guilty plea].") [6]

It is not easy to reconcile all of the important considerations that are embodied in all of these cases. On one hand, the policy of 18 U.S.C. § 4207, as enunciated in many Tenth Circuit cases, is to allow the parole commission to utilize a very broad information base in making its parole determinations. On the other hand, the harsh reality to a criminal defendant is that his actual period of incarceration is more important than the length of his sentence. I therefore hesitate to conclude that the guarantees of the Fourth, Fifth, and Sixth Amendments are totally inapplicable to a parole determination, but this appears to be the conclusion of *Dye v. U. S. Parole Commission,* 558 F.2d 1376, 1379 (10th Cir. 1977). But cf. *United States v. Tucker,* 404 U.S. 443, 447–49, 92

---

**6.** These three cases were all decided when F.R. Crim.P. 11 required the trial judge to determine that the defendant understood "the consequences" of his guilty plea. See 420 F.2d at 436 n.3. Since then, in 1974, Rule 11 was amended. It no longer uses the "consequences" language, but instead spells out in much greater detail what the trial judge must inform the defendant. See *United States v. Eaton,* 579 F.2d 1181, 1183 (10th Cir. 1978). Because the new version requires trial judges to inform the defendant of any mandatory minimum and maximum penalties, I conclude that the *Jenkins* analysis is still applicable.

Even if Rule 11 does not require that a defendant be advised of his ineligibility for parole, the Constitution does. The Tenth Circuit did not need to consider this issue in *Jenkins,* because of its conclusion on Rule 11. However, several federal courts reviewing guilty pleas made in state courts, where Rule 11 does not apply at all, did consider this constitutional issue.

In *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the U.S. Supreme Court reviewed the validity of a guilty plea made in state court. The supreme court stated:

> Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment ... Second, is the right to trial by jury. Third, is the right to confront one's accusers. We cannot presume a waiver of these three important federal rights from a silent record.
> What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes *and of its consequence.*

*Id.* at 243–44, 89 S.Ct. at 1712 (citations and footnote omitted) (emphasis added). The court then reemphasized this holding in *Brady v. United States,* 397 U.S. 742, 748 n.6, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970), where it stated

> The importance of assuring that a defendant does not plead guilty except with a full understanding of the charges against him *and the possible consequences of his plea* was at the heart of our recent decision [ ] in ... *Boykin v. Alabama,* 395 U.S. 238 [89 S.Ct. 1709, 23 L.Ed.2d 274] (1969). (Emphasis added.)

See also *Kercheval v. United States,* 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927);

> Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.

In *Watts v. Brewer,* 340 F.Supp. 378 (S.D. Iowa 1972), the court reviewed a parole-violation conviction. One of the key pieces of evidence sustaining the conviction was the defendant's prior plea of guilty to committing a misdemeanor while on parole. Relying on *Boykin,* the court held:

> ... a defendant is to be informed of the full consequences of his plea, but not necessarily the full consequences of all his future actions. But in this case, there was nothing to speculate about.... Thus, the trial court was well aware that Watts' plea could be used as a basis for a charge of parole violation, but failed to advise him of this. There was no need for the trial court to speculate about future actions of Watts; on the basis of the discussions of Watts' parole status, the trial court knew that the plea of guilty to OMVUI was tantamount to a plea of guilty to parole violation, and the judge's failure to inform Watts of this, particularly when Watts was unassisted by counsel, rendered the plea of guilty constitutionally inadmissible in Watts' subsequent trial for parole violation.

*Id.* at 382.

I conclude that these cases bar the use of guilty pleas at subsequent hearings having parole consequences if the defendant is not advised of possible parole consequences before he makes a guilty plea.

S.Ct. 589, 591–592, 30 L.Ed.2d 592 (1972) (sentence must be vacated if *sentencing judge* considered prior unconstitutional convictions in determining the sentence).

Even if the parole commission may normally consider matters that are constitutionally inadmissible at trial or at sentencing, it may not if doing so would violate a prior plea agreement. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). A related problem arises when the defendant pleads guilty without realizing that evidence of the crimes charged in the dismissed counts may still be used in his parole determination. The practical effect of such consideration often is a much longer period of incarceration before a defendant is eligible for parole. As I noted earlier, the Tenth Circuit held in *Barber, Jenkins,* and *Bronson,* under F.R.Crim.P. 11, that ineligibility for parole is one of the consequences of a guilty plea of which a defendant must be advised before making the plea. The U. S. Supreme Court decisions of *Boykin, Brady,* and *Kercheval,* discussed in footnote 6, *supra,* held that a defendant could not effectively waive his constitutional rights unless he first fully understands the important consequences of his guilty plea. Because a long delay in eligibility for parole is such an important consequence, a defendant may not effectively waive his constitutional rights by pleading guilty unless he understands the parole consequences of doing so.

The parole commission may consider, in making a parole determination, evidence of offenses committed by the prisoner that are charged in dismissed counts, so long as there are not any dominant countervailing considerations. However, if doing so would violate a previous plea agreement made by a government prosecutor, then the commission may not consider such evidence. Also, if a defendant pleaded guilty without the knowledge that or under the mistaken impression that evidence of the dismissed counts would not be considered in his parole determination, then the commission may not base its decision on such evidence. If it persists in doing so, then the defendant must be given an opportunity to withdraw his guilty plea.

## B. *Applying the Guidelines*

In determining a prisoner's offense severity the parole commission obviously can consider any crime for which the prisoner constitutionally pled or was found guilty. The commission may also include evidence of other offenses. However, if the prisoner disputes the other offenses, then the commission's regulations allow it to use them to determine offense severity if it first finds, by a preponderance of the evidence, that the prisoner in fact committed them. 28 C.F.R. § 2.19(c). In disputed cases, the commission should make explicit findings of what offenses it believes that the prisoner committed. In particular, it should separate those offenses for which the prisoner pled or was found guilty from those which were not charged or for which the counts were dismissed. Such a separation will eliminate confusion over the basis for the commission's findings.

Although the commission may make a parole determination outside of the guidelines, see 28 C.F.R. § 2.20(c), (d), it must issue a written notice stating its reasons for doing so. 18 U.S.C. § 4206(c). It is therefore essential that the commission first faithfully follow its own regulations in applying the guidelines. In particular, it should explicitly state the bases for its determinations of offense severity and salient factor score. See *Lupo v. Norton,* 371 F.Supp. 156, 161–62 (D.Conn.1974).

Another problem arises when the commission changes the guidelines between the date an offense is committed and the date of a prisoner's parole determination. Regulations, like statutes, are covered by the *Ex Post Facto* Clause, U.S.Const. art. I, § 9, Cl. 3. *Rodriguez v. U. S. Parole Commission,* 594 F.2d 170, 173 (7th Cir. 1979). In *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), the U. S. Supreme Court established a two-part test to determine if a law is *ex post facto*:

it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.

*Id.* at 29, 101 S.Ct. at 964 (citations omitted). The law need not, however, impair a "vested right" to violate the *ex post facto* prohibition. *Id.*

> Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consumated.

*Id.* at 30, 101 S.Ct. at 965. Thus, the parole commission may not retrospectively apply a new regulation if the result would be more onerous to the prisoner. *Rodriguez v. U. S. Parole Commission,* 594 F.2d at 173–76; see *Hayward v. U. S. Parole Commission,* 659 F.2d 857, 862 (8th Cir. 1981). If the new regulations would have a more onerous effect on the prisoner than those in effect at the time he committed the crimes, then the commission must apply the earlier regulations.

### C. *Going Beyond the Guidelines*

 As I noted earlier, the commission may decide to make a parole determination outside the guidelines. 28 C.F.R. § 2.20(c), (d). 18 U.S.C. § 4206(c) authorizes the commission to do so "if it determines there is good cause for doing so." However, if it does this, it must furnish the prisoner with

> written notice stating with particularity the reasons for its determination, including a summary of the information relied on.

*Id.* See generally *Little v. Hadden,* 504 F.Supp. 558, 562 (D.Colo.1980); *Brach v. Nelson,* 472 F.Supp. 569, 574 (D.Conn.1979). Several courts have held that the commission cannot use information to determine offense severity or salient factor score, and then use the same information as a justification for going beyond the guidelines. *Little v. Hadden,* 504 F.Supp. at 562; *Brach*

*v. Nelson,* 472 F.Supp. at 574; *United States ex rel. Jacoby v. Arnold,* 442 F.Supp. 144, 148 (M.D.Pa.1977). The usual approach is to include all of the proven offenses, whether dismissed or not, to determine the offense severity. Then none of these offenses can be considered as aggravating circumstances. An alternative would be to determine offense severity just from the offenses for which the prisoner pled or was found guilty, and then to consider the other offenses as aggravating circumstances.[7] See generally *Lupo v. Norton,* 371 F.Supp. 156, 162–63 (D.Conn.1974). In any case, however, the same offense cannot be used for both purposes:

> It is simply irrational for seriousness of the offense to be used first to determine the appropriate guideline period and then to be used again as the stated reasons for confining a prisoner beyond that guideline period.

*Id.* at 163.

## III. DISPOSITION OF THESE CASES

### A. *Allen v. Hadden, Civil Action No. 81–K–1863*

Petitioner Allen is currently serving sentences on a number of crimes for which he pled or was found guilty. All of the disputes in his present petition relate to the last offense, aiding and abetting the importation of marijuana into the United States. He states five general grounds for granting the writ:

1. The respondents improperly considered allegations contained in the dismissed counts of the last indictment in determining his parole date;

2. The consideration of these allegations violated an express plea agreement made by the government;

3. The conclusions that the petitioner in fact committed the offenses charged in the dismissed counts were not supported by a preponderance of the evidence;

4. The respondents placed the petitioner in the wrong severity category of

---

7. This second approach has the disadvantage that it could largely circumvent the guidelines, opening the door for potential abuses of discretion.

the parole guidelines, 28 C.F.R. § 2.20, even if they properly considered the offenses charged in the dismissed counts; and

5. The respondents improperly went beyond the guidelines by using information that already went into determining the application of the guidelines.

This petitioner was charged with a 35-count indictment alleging that he was involved in a complex conspiracy to import over 34,000 pounds of marijuana and to export over $641,000. After the petitioner pled guilty to two counts, which alleged importation of 2,400 to 3,200 pounds of marijuana and exportation of $8,000, the government dismissed the other counts.

■■■ As I concluded in part II.A. *supra*, it is proper for the parole commission to consider offenses charged in dismissed counts of the indictment, provided there are not any dominant countervailing considerations. I therefore reject petitioner's first argument.

■■■ Petitioner's second argument is more complicated. When the petitioner pled guilty, he and the government executed a written plea agreement. Paragraph 15 states:

The Government agrees that there is nothing present in the facts of this case to warrant a recommendation from the Government or its agents or the DEA or its agents to the United States Parole Commission outside the normal regulations and guidelines which control their decision-making process. In other words, the Government will not interfere with the Parole Commission's normal considerations. This should not be considered, however, to mean that the United States Attorney's Office is making a specific recommendation as to leniency.

Magistrate Abram concluded that this provision was not violated because the prosecutors did not make any statements to the parole commission. I agree with this conclusion. However, at the rearraignment hearing, the prosecutor made a broader statement:

... at the time of sentencing if the Court accepts the plea, that the Government will move to dismiss the remaining counts of the indictment, and they would have no adverse effect on the defendant and the counts will be dismissed with prejudice, as I understand it, at the time of sentencing.

In part II.A. *supra*, I noted that the government must stand by its plea agreement. I conclude that it has not done so here. At the re-arraignment hearing the prosecutor stated that the dismissed counts "would have no adverse effect on the defendant." Later, however, the parole commission considered the offenses alleged in these dismissed counts in making its parole determination.[8] On remand, the parole commission must disregard the dismissed counts. If it does not, then the petitioner must be given an opportunity to withdraw his guilty plea.

■■■ Petitioner's third argument is that the parole commission's conclusions on the dismissed counts were not supported by a preponderance of the evidence. In every notice of action, the parole commission stated that the petitioner was *convicted* of a conspiracy to import over 34,000 pounds of marijuana. In every appeal petition, the petitioner pointed out that he had not been convicted of such offenses. Yet the parole commission persisted in making this obviously false statement.[9] As far as I can tell, the parole commission made no distinction

---

**8.** This case is therefore distinguishable from the *Goldberg* case, discussed in note 5 *supra*. In *Goldberg* the dismissal was simply "with prejudice." Here the dismissal was "with prejudice," but the government also stated that the dismissed counts "would have no adverse effect" on the defendant.

**9.** In making its parole decision the regional commission stated:

Your offense behavior has been rated as Greatest II severity because you were convicted of multiple separate offenses, conspiracy to import more than 34 thousand pounds of marijuana during three separate periods, and escape from confinement. This was ongoing, sophisticated and international in scope. This conspiracy utilized many leased airplanes, at least 34 co-conspirators and you had a proprietary and managerial interest.

between the offenses charged in the indictment and those to which the petitioner pled or was found guilty. None of the information submitted by the government in this case reveals any evidence that would support a commission finding that the petitioner in fact was a participant in this conspiracy. In fact, the petitioner has submitted evidence that he did not participate in this conspiracy. Because the petitioner disputes that he was involved in this larger conspiracy, the commission must resolve this issue by applying a preponderance of the evidence standard. 28 C.F.R. § 2.19(c). Because it has totally failed to do so here, I conclude that it has abused its discretion.

██ Petitioner's fourth argument is that the commission rated his offense with the wrong severity. The regional commission rated his offense severity as Greatest II. The national commission changed this rating to Greatest I. The current guidelines state that possession of over 2,000 pounds of marijuana with the intent to distribute or sell it is an offense of "very high" severity. There is no upper limit on the amount of marijuana in this category. The Greatest I and Greatest II categories do not include any marijuana offenses. I therefore conclude that the commission abused its discretion in rating petitioner's offense as either Greatest I or Greatest II. Further, petitioner argues, that at the time

> This conspiracy occurred over a four year period. At least $641,000 was identified by DEA as money paid for purchase of marijuana in Mexico and Colombia. You have a Salient Factor Score of 10 (see attached sheet). You have been in custody a total of 22 months. Guidelines established by the Commission for Adult cases which consider the above factors indicate a range of 52 + months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, a decision outside the guidelines at this consideration is not found warranted.
> On appeal the National Appeals Board stated:
> Your offense behavior has been rated as Greatest I severity because you were convicted of multiple separate offenses, conspiracy to import more than 34 thousand pounds of marijuana during three separate periods, and escape from confinement. You have a salient factor

he committed the offense, the guidelines rated its severity as "high." As I noted in part II.B. *supra*, if this is the case, then the commission must properly apply those guidelines that were in effect when he committed the offense.

██ Petitioner's final argument is that the national commission improperly went beyond the guidelines in determining his parole date. After the national commission downgraded petitioner's offense severity from Greatest II to Greatest I, it concluded that the same parole date was appropriate because of aggravating circumstances.[10] All of the facts listed in support of this conclusion appear to be ones that also were used to determine offense severity and salient factor score. As I noted in part II.C. *supra*, this practice is impermissible.

Because the commission abused its discretion in so many different ways, I must remand this case to the commission for proper re-determination of the petitioner's parole date. See generally *Watts v. Hadden*, 469 F.Supp. 223, 233–35 (D.Colo.1979).

### B. *Robinson v. Hadden*, Civil Action No. 81–K–2020

Petitioner Robinson is currently serving a sentence on one count of bank robbery to which he pled guilty. He states four general grounds for granting the writ:

> score of 10. You have been in custody a total of 29 months. Guidelines established by the Commission for Adult cases which consider the above factors indicate a range of 40–52 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, a decision above the guidelines appears warranted because your offense behavior involved the following aggravating factors: You were one of the principals in this large scale, ongoing conspiracy which used airplanes to import multi-ton quantities of marijuana into the U.S. Further, you are a poorer parole risk than indicated by your salient factor score in that, while on appeal bond regarding the first marijuana offense, you became involved in two additional offenses involving marijuana for which you were subsequently convicted.

**10.** See note 9 *supra*.

1. The respondents should not have considered the dismissed counts of petitioner's indictment in determining his parole date;

2. The respondents' conclusion that the petitioner committed the other four bank robberies charged in the dismissed counts was not supported by a preponderance of the evidence;

3. The respondents placed the petitioner in the wrong severity category of the parole guidelines, 28 C.F.R. § 2.20, even if they properly considered the offenses charged in the dismissed counts; and,

4. The respondents abused their discretion by not going below the guidelines in determining the petitioner's parole date.

█ Petitioner's first argument clearly demonstrates the problem that concerned the courts in *Pernetti, Wixom,* and *Watts,* discussed in part II.A. *supra.* By considering all five robberies, instead of just the one to which the petitioner pled guilty, the parole commission increased his offense severity by two levels, and increased his presumptive period of incarceration from 60–72 months to 100 + months. Yet, as I concluded in part II.A., I believe that several Tenth Circuit cases dictate that it was proper for the parole commission to consider the offense charged in the dismissed counts.

█ As I noted, there is often a serious danger that a defendant will plead guilty on the erroneous assumption that the dismissed counts will not be considered in making his parole determination. There is no evidence in this case, however, of such an erroneous assumption. Nor is there any evidence that the government made any promises in return for the guilty plea that it later breached. Under these circumstances I therefore conclude that the parole commission did not abuse its discretion.

█ Petitioner's second argument is that the parole commission improperly concluded that he actually committed the other four robberies. At the last hearing in this case, I requested that the government submit a tape of this petitioner's parole hearing. I have now received and reviewed that tape. At that hearing the petitioner admitted that he had committed all five bank robberies. Absent any contradictory evidence, I conclude that the commission's finding that the petitioner committed five bank robberies was supported by a preponderance of the evidence.

█ The petitioner's third argument is that the commission abused its discretion in rating his offense as Greatest II severity. The guidelines provide that one or two robberies is "very high" severity, and that three or four robberies is Greatest I severity. Robbery involving serious injury is Greatest II severity. The notes to the guidelines state:

B. If an offense behavior is not listed above, the proper category may be obtained by comparing the severity of the offense behavior with those or similar offense behaviors listed.

\* \* \* \* \* \*

D. If an offense behavior involved multiple separate offenses, the severity level may be increased.

Because the offense of five robberies is not listed in the guidelines, but four robberies is Greatest I severity, I conclude that the commission did not abuse its discretion in rating five offenses as Greatest II severity.

█ Petitioner's final argument is that the commission abused its discretion by following the guidelines' recommended parole date, rather than going below the guidelines. In particular, petitioner cites his successful efforts at overcoming the heroin addiction that was the motivation for his prior criminal activity, his success at prison vocational training courses, his recent marriage and other contributions to the prison community. He also questions the parole commission's consideration of an incident report that stated that the petitioner stabbed another inmate, when in fact the prison officials later found that the petitioner had acted in self defense. All of this evidence is encouraging, but it does not

support a finding that the parole commission abused its discretion in not going below the guidelines.

Because I have concluded that the commission did not abuse its discretion, I deny petitioner's petition for writ of habeas corpus.

IT IS ORDERED in Civil Action No. 81–K–1863 that this case is remanded to the respondents for further consideration and actions consistent with this opinion and order. In particular, the respondents shall make a new determination of petitioner's offense severity rating, applying the guidelines that were in effect when the offenses were committed. This determination shall be made within sixty (60) days and shall be based solely on new findings of fact made by the commission in a manner consistent with this opinion. Should the respondents decide that a parole determination outside of that recommended by the guidelines is warranted, it shall, in accordance with 18 U.S.C. § 4206(c), state in writing its reasons for that determination. None of the factors used to determine offense severity or petitioner's salient factor score shall also be used as justification for making a parole determination outside of the guidelines. It is further

ORDERED that the respondents shall make a determination of petitioner's parole status, including all normally available administrative appeals, within sixty (60) days of the date of this order. If such a determination is not made within this time, the petitioner may petition this court for further appropriate relief. This court will therefore retain jurisdiction to issue any orders that shall be necessary in the future. It is further

ORDERED in Civil Action No. 81–K–2020 that the petition for writ of habeas corpus is denied. Each party to bear his or its own costs.