John Brett ALLEN, Petitioner–Appellant,

v.

John T. HADDEN, United States Parole
Commission, Respondents–Appellees.

No. 93–1420.

United States Court of Appeals,
Tenth Circuit.

June 20, 1995.

Leonard E. Davies, Denver, CO, for petitioner-appellant.

John M. Hutchins, Asst. U.S. Atty. (Henry L. Solano, U.S. Atty., Daniel J. Cassidy, Asst. U.S. Atty., with him on the brief), Denver, CO, for respondents-appellees.

Before BALDOCK, McKAY, and EBEL, Circuit Judges.

BALDOCK, Circuit Judge, delivered the opinion for a unanimous Court with respect to Parts I.A, I.C, and I.D, and the opinion of the Court with respect to Part II in which McKAY, Circuit Judge, joined.

EBEL, Circuit Judge, delivered the opinion of the Court with respect to Parts I.B and I.E.1 in which McKAY, Circuit Judge, joined, and I.E.2 in which BALDOCK, Circuit Judge, concurred.

BALDOCK, Circuit Judge, filed an opinion concurring in Parts I.E.1 and I.E.2.

EBEL, Circuit Judge, filed an opinion concurring in Part II.

BALDOCK, Circuit Judge, filed an opinion dissenting in Part I.B.

McKAY, Circuit Judge, filed an opinion dissenting in Part I.E.2.

Petitioner John Brett Allen appeals the district court's denial of his motion to vacate his convictions on the grounds the government and the State of Texas breached their plea agreements. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm in part and reverse and remand in part.

Our review of the record reveals the following complicated history. In 1980 authorities charged Petitioner in federal and state court in Texas with a number of offenses related to a complex drug conspiracy, including the importation of marijuana into the United States, and the exportation of currency to Mexico. Petitioner entered plea bargains with authorities in both jurisdictions. Pursuant to the plea agreements, Petitioner pled guilty in federal court in the Western District of Texas, Austin Division, to two counts of a thirty-six count indictment, and in state district court in Concho County, Texas, to the single charge alleged against him. In return, the two jurisdictions dismissed counts against Petitioner, and promised him certain concessions. Specifically, Petitioner's federal plea agreement provided that in exchange for his guilty plea to two counts of the thirty-six count indictment and agreement to testify against codefendants, the government would dismiss the remaining counts. Additionally, when Petitioner appeared in federal court for the re-arraignment hearing on September 4, 1980, the government agreed to an additional concession when the following colloquy occurred between Mr. Grigson, counsel for Petitioner, and Mr. Pierce, counsel for the government:

> THE COURT: You have expressed my understanding of the agreement, which was made known to the Court, and I agree to be bound by that.
>
> MR. GRIGSON: That's our understanding, Your Honor, and that at the time of sentencing if the Court accepts the plea, that the Government will move to dismiss the remaining counts of the indictment, *and they would have no adverse effect on the defendant,* and the counts will be dismissed with prejudice as I understand it, at the time of sentencing.
>
> THE COURT: The Government agrees to do that?

MR. PIERCE: That's correct, Your Honor.

Vol. I, Tab 12 at ex. 5 (emphasis added). Following the above exchange, the district court accepted Petitioner's pleas of guilty and ordered him to serve two five-year consecutive sentences, in accordance with the plea agreement.

Petitioner's written plea agreement in state court provided that the state prosecutors would, *inter alia:* (1) recommend that Petitioner serve all confinement resulting from his state sentence in a federal correctional institution, concurrently with the federal sentence, and (2) not file a detainer against Petitioner with federal authorities. On October 2, 1980, Petitioner appeared in state court, pled guilty to the single charge, and consistent with his plea agreement, was sentenced to a term of not less than two nor more than ten years, to run concurrently with his federal sentence. Subsequently, Petitioner entered a federal penitentiary where he began serving the concurrent federal and state sentences.

Petitioner initially commenced this case pro se on October 22, 1981 by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner asserted that the United States Parole Commission erroneously computed his parole eligibility date by: (1) relying on dismissed counts in his indictment to determine his parole eligibility date in violation of his federal plea agreement, and (2) utilizing offense severity both to establish the applicable guideline rating and to exceed the range required under the guidelines.

The district court ruled that the government violated Petitioner's federal plea agreement because the parole commission had improperly used dismissed counts of the federal indictment in its parole determination. *See Allen v. Hadden (Allen I),* 536 F.Supp. 586 (D.Colo.1982). Specifically, the district court ruled that the prosecutor agreed at the rearraignment hearing "that the dismissed counts would have no adverse effect on the defendant." *Id.* at 597 (quotations omitted). Because the parole commission considered the offenses alleged in the dismissed counts in making its parole determination, the district court ruled the dismissed counts had an adverse effect on Petitioner. Thus, the district court concluded the government had violated the plea agreement and remanded to the parole commission with the instruction that "the parole commission must disregard the dismissed counts. If it does not, then the petitioner must be given an opportunity to withdraw his guilty plea." *Id.* at 598. Additionally, the district court held that the parole commission impermissibly used the same factors to determine offense severity and to justify exceeding the guidelines. *Id.* Finally, the district court noted that it would "retain jurisdiction to issue any orders that shall be necessary in the future." *Id.* at 600.

The government filed a notice of appeal from the district court's order in *Allen I* on June 4, 1982. Subsequently, on the government's motion, the district court dismissed the appeal, but not before Petitioner was released on a fully secured appeal bond. After the district court dismissed the appeal in *Allen I,* the government filed a motion to revoke Petitioner's appeal bond in order that he serve the unexpired portion of his sentence. Petitioner responded that the district court should not revoke the appeal bond, but order that the parole commission release him immediately on parole.

The district court denied the government's motion to revoke Petitioner's appeal bond. *See Allen v. Haddon (Allen II),* 558 F.Supp. 400, 403 (D.Colo.1983). Additionally, the district court noted that the parole commission continued to calculate Petitioner's parole eligibility date improperly by double counting his offenses.

On appeal from *Allen II,* we reversed and concluded that "[i]n our view, this use of the three convictions does not amount to double-counting." *Allen v. Hadden (Allen III),* 738 F.2d 1102 (10th Cir.1984). We remanded to the district court, and on August 22, 1984, the district court dismissed the petition.

Following dismissal, on September 24, 1984, the district court granted the government's renewed motion to revoke Petitioner's appeal bond, and ordered that he surrender to serve the balance of his sentence. Petitioner, however, did not surrender as ordered. Neither Petitioner, his attorney, nor

the United States Marshals Service received a copy of the order directing Petitioner to surrender to serve the remainder of his sentence.[1]

On January 23, 1990, the government discovered that Petitioner had not turned himself in five and one-half years earlier. The next day, the district court granted the government's motion and issued a bench warrant for Petitioner. Petitioner was arrested in Florida on February 6, 1990, and incarcerated in a federal penitentiary.

Approximately two years later Petitioner filed pro se the instant "Motion for Relief Pursuant to this Court's Established Law of the Case by Vacating Invalid Convictions." In his motion, Petitioner contended that the United States government breached its promise that the dismissed counts of his federal indictment would have no adverse effect on him. Specifically, Petitioner argued that the dismissed counts had adversely effected him in breach of the plea agreement because: (1) the parole commission continued to rely on the dismissed counts to determine his parole eligibility date; (2) federal agents mentioned the dismissed counts of his federal indictment in affidavits used to secure search warrants for his properties in 1990; (3) information about the dismissed counts was received by the probation officer and incorporated in a presentence report prepared to aid sentencing Petitioner in an unrelated case; and (4) the parole commission and the Bureau of Prisons relied on the dismissed counts to justify adverse classification decisions. Petitioner did not seek recalculation of his parole eligibility date as a result of the alleged breaches, but an order vacating the federal convictions entered on his guilty pleas over a decade earlier.

Additionally, Petitioner asserted Texas violated the state plea agreement by (1) incarcerating him in a state facility pursuant to the state sentence, and (2) filing a detainer against him with federal authorities. As a remedy, Petitioner sought an order vacating his state conviction.[2]

Petitioner moved for summary judgment based on his motion to vacate his convictions. The district court appointed counsel for Petitioner, and referred the motion to a magistrate judge who conducted an evidentiary hearing on September 4, 1992. Under a contract law analysis subsequently adopted by the district court, the magistrate judge construed the government's no adverse effect promise to mean only that the parole commission would not rely on the dismissed counts to determine Petitioner's parole eligibility date. The magistrate judge, therefore, rejected Petitioner's contention that the government's promise meant that he would suffer no adverse effect whatsoever from any government agency based on the dismissed counts. In support of its interpretation, the magistrate judge cited an affidavit of Mr. Grigson, Petitioner's counsel at the re-arraignment hearing, who was the source of the no adverse effect language. Mr. Grigson stated that the "purpose for mentioning that the dismissed counts would have no adverse effect was to insure that the United States Parole Commission would not use dismissed counts in calculating Mr. Allen's release date on parole." Because the magistrate judge found that Petitioner failed to present any evidence that the parole commission continued to rely on the dismissed counts to determine his parole eligibility date, the magistrate judge rejected Petitioner's argument.

Additionally, based on his finding that the no adverse effect language referred to the

---

1. In *Allen v. Belaski*, No. 91–M–639 (D.Colo. Dec. 5, 1991), the district court ruled that the lack of notice and five year interim before Petitioner returned to custody was due to government negligence.

2. Pursuant to the district court's direction in *Allen I* that if the parole commission does not disregard the dismissed counts, "then the petitioner must be given an opportunity to withdraw his guilty plea," *Allen I*, 536 F.Supp. at 597, Petitioner filed to withdraw his state guilty plea

in the 198th Judicial District of Texas. The state district court denied Petitioner's motion without a hearing or opinion, and the Texas Court of Criminal Appeals denied his appeal without opinion. Pursuant to 28 U.S.C. § 2255 Petitioner moved to withdraw his federal guilty pleas in the United States District Court for the Western District of Texas, Austin Division. The district court denied Petitioner's motion. *See Allen v. United States*, No. A–91–CA–259 (W.D.Tex. June 13, 1991).

parole commission and not to the entire government, the magistrate judge concluded that the government did not breach the federal plea agreement when it mentioned the dismissed counts in affidavits for search warrants, in a presentence report prepared by the probation office to sentence Petitioner in a separate case, and in institutional files supporting allegedly adverse classification decisions within the federal prison system.

Regarding the state plea agreement, the magistrate judge rejected as unreasonable Petitioner's argument that Texas could not incarcerate him in a state penitentiary under the state plea agreement. However, the magistrate judge recognized that Texas had breached its plea agreement when it filed a detainer against Petitioner with federal authorities.

Thus, except for its finding that Texas filed a detainer against Petitioner, the magistrate judge concluded that neither the federal government nor the State of Texas had violated the plea agreements. The magistrate judge, therefore, recommended that the district court issue an order to the Bureau of Prisons directing it to give no effect to the Texas detainer filed against Petitioner. Finally, the magistrate judge recommended that the district court dismiss Petitioner's motion to vacate his convictions.

Both parties filed objections to the magistrate judge's findings. On July 19, 1993, the district court adopted the magistrate judge's findings and recommendations and denied Petitioner's motion to vacate convictions.[3] This appeal followed.

On appeal, Petitioner contends the district court erred by: (1) concluding the government had not breached its plea agreement; (2) concluding the State of Texas had not breached its plea agreement; and (3) failing to grant summary judgment in his favor.

Whether government conduct has violated a plea agreement presents a question of law which we review de novo. *United States v. Robertson,* 45 F.3d 1423, 1442 (10th

Cir.), *petition for cert. filed,* (April 24, 1995). We review the district court's interpretation of the terms of a plea agreement for clear error. *United States v. Floyd,* 1 F.3d 867, 869 (9th Cir.1993); *United States v. Borders,* 992 F.2d 563, 566–67 (5th Cir.1993). "Where the government obtains a guilty plea predicated in any significant degree on a promise or agreement with the prosecuting attorney, such promise must be fulfilled to maintain the integrity of the plea." *United States v. Hand,* 913 F.2d 854, 856 (10th Cir.1990); *see also Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). " 'Plea bargains, like contracts, cannot normally be unilaterally broken with impunity or without consequences.' " *United States v. Stemm,* 847 F.2d 636, 637 (10th Cir.1988) (quoting *United States v. Reardon,* 787 F.2d 512, 516 (10th Cir.1986)).

In order to determine whether the government has violated the terms of a plea agreement, the court must first examine the nature of the prosecutor's promise, *United States v. Pogue,* 865 F.2d 226, 227 (10th Cir.1989), based upon what the defendant reasonably understood when the guilty plea was entered, *Robertson,* 45 F.3d at 1442; *United States v. Shorteeth,* 887 F.2d 253, 256 (10th Cir.1989). Consistent with the contract law-based analysis that governs plea agreement disputes, the party who asserts a breach of a plea agreement has the burden of proving the underlying facts that establish a breach by a preponderance of the evidence. *United States v. Martin,* 25 F.3d 211, 217 (4th Cir.1994); *United States v. Hernandez,* 17 F.3d 78, 81 (5th Cir.1994); *see also United States v. Calabrese,* 645 F.2d 1379, 1390 (10th Cir.), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981). If the court finds that the government breached the plea agreement, the court must remand the case either for specific performance or withdrawal of the defendant's guilty plea. *Santobello,* 404 U.S. at 262–63, 92 S.Ct. at 499; *United States v. Canada,* 960 F.2d 263, 271 (1st Cir.1992). However, "[t]he choice of remedy rests with the court and not the defendant."

---

**3.** The district court did grant Petitioner relief, however, by ordering that the Bureau of Prisons give no effect to the detainer lodged against him by the State of Texas. Because neither party

challenges this issue on appeal, the district court's resolution of the issue stands. *United States v. Cook,* 997 F.2d 1312, 1316 (10th Cir. 1993).

*Canada,* 960 F.2d at 271. With these principles in mind, we address Petitioner's arguments in turn.

### I.

Petitioner maintains the district court erred in finding that the government had not breached its plea agreement. Specifically, Petitioner argues the district court erred by ruling that: (1) the no adverse effect language referred only to the parole commission; (2) the parole commission did not rely on the dismissed counts to determine his parole eligibility date; (3) the government did not breach the plea agreement when federal officials mentioned the dismissed counts in affidavits for search warrants; (4) the government did not breach the plea agreement when it referenced the dismissed counts in a presentence report in an unrelated case; and (5) the parole commission and the Bureau of Prisons did not rely on the dismissed counts to support their classification decisions.

### A.

■ Petitioner first argues the district court erred in ruling that the no adverse effect term of the plea agreement prohibited only the parole commission, and not other government agencies, from relying on the dismissed counts. We agree.

Pursuant to the plea agreement, the government promised that it would dismiss the remaining counts of the federal indictment with prejudice and they "would have no adverse effect on the defendant." Based on this information and the affidavit of Mr. Grigson, the district court ruled that the word "government" in the no adverse effect term of the plea agreement signified only the parole commission. Thus, the district court held that the plea agreement did not prohibit other government agencies from utilizing the dismissed counts to adversely effect Petitioner.

■ In order to determine whether the plea agreement binds the government as a whole or a specific agency, we must examine what the defendant reasonably understood when the plea was entered. *See, e.g., Robertson,* 45 F.3d at 1442, *Shorteeth,* 887 F.2d at 256. Additionally, as the Fourth Circuit observed:

> Whenever a United States Attorney negotiates and enters a plea agreement, it is the Government that "agrees" to whatever is agreed to. Of course, the Government may—and quite readily can—"agree" through its agents that only certain of its agents are to be obligated in particular respects, or that the Government's obligation is otherwise qualified.

*United States v. Harvey,* 791 F.2d 294, 303 (4th Cir.1986). Absent an express limitation on the government's obligations, a plea agreement entered on behalf of the government binds the government as a whole. *See id.* ("It is the Government at large ... that is bound by plea agreements negotiated by agents of Government.").

Applying these principles to the instant case, we conclude Petitioner reasonably believed the no adverse effect term applied not only to the parole commission, but to the government as a whole.[4] Neither the written plea agreement nor the prosecutor at the rearraignment hearing expressly limited the scope of the no adverse effect term to the parole commission. Indeed, when directly questioned by the district court whether the government agreed that the remaining counts of the indictment would be dismissed with prejudice and would have no further adverse effect on Petitioner, the prosecutor answered "That's correct, Your Honor." The

---

4. The district court's reliance on the extrinsic evidence supplied by Mr. Grigson's affidavit does not illuminate how Petitioner reasonably interpreted the plea agreement. Indeed, we note that the record before us contains a second affidavit prepared by Mr. Grigson in which he stated, "the purpose of making the statement that the dismissed charges would have no adverse effect was to prevent the Government from using the dismissed counts against him in the future. Obvi-

ously at the time the only agency that I contemplated that might use the dismissed counts would be the United States Parole Commission or possibly the Bureau of Prisons, but our intent was that the dismissed counts not be used against him in any way by the Government in the future." Petitioner attached Mr. Grigson's second affidavit to his objections to the recommendation of the magistrate judge.

district court did not ask the prosecutor whether the government agreed that the dismissed counts would have no adverse effect on Petitioner's parole eligibility calculation before the parole commission, nor did the prosecutor limit the promise to a single government agency in his answer. Instead, the prosecutor broadly agreed that the government would not adversely effect Petitioner based on the dismissed counts.

Consequently, based on Petitioner's reasonable understanding of his plea agreement, *Robertson*, 45 F.3d at 1442, we hold that the government may not utilize the dismissed counts of Petitioner's federal indictment to adversely effect him. The district court, therefore, was clearly erroneous in ruling that the no adverse effect term of the plea agreement applied only to the parole commission.

### B.

█ Petitioner next contends that the district court erred by ruling that the parole commission calculated his parole eligibility date without reference to the dismissed counts of his federal indictment. Petitioner must prove his allegations by a preponderance of the evidence. *Hernandez*, 17 F.3d at 81. We conclude that Petitioner has satisfied his burden and shown by a preponderance of the evidence that the Parole Commission relied on the dismissed counts to calculate his parole eligibility date.

Although the March 26, 1991 parole commission Notice of Action establishing Petitioner's parole eligibility does not specifically mention the dismissed counts, Petitioner has adequately demonstrated that the parole commission likely based its sixty-month parole determination on the 34,000 pounds of marijuana involved in the dismissed counts. First, Petitioner has shown that the parole commission notice of action explicitly states

that the sixty-month date was determined *within* the regulatory guidelines. R.O.A. Vol. I at Tab 12, Exhibit 16 ("a decision outside the guidelines at this consideration is not found warranted"); R.O.A. Vol. II at 70–71 (testimony of FCI Englewood case management coordinator Robert Buselt confirming that Notice of Action indicates the Parole Commission saw no reason to depart from parole guideline range). Second, Petitioner has shown that a sixty-month parole eligibility date could not have been obtained within the parole guidelines solely by reference to the counts to which he pled guilty. Specifically, Petitioner pled guilty to drug offenses involving 3,300 pounds of marijuana. Under the parole commission guidelines then in effect, Petitioner's offense characteristic classification was a category five based on that quantity of marijuana. *See* Parole Commission Rules 28 C.F.R. §§ 2.1–2.65 (1989). With the salient factor score of 9 assigned by the parole commission, and addition of an unrelated escape conviction, the parole guideline range would have been thirty to forty-eight months absent any departures from the guidelines.[5] However, the parole commission could have calculated a parole date of sixty months within the guidelines if it considered the 34,000 pounds of marijuana referenced in the dismissed counts of the federal indictment. Under the parole guidelines, 34,000 pounds of marijuana yields an offense characteristic classification of category six, and when combined with his unrelated escape conviction and salient factor score of 9, produces a parole eligibility range of forty-six to sixty-two months. *See id.* Thus, Petitioner has established that the parole commission likely calculated the sixty-month parole eligibility date within the guidelines by considering the dismissed counts to his detriment.[6]

It is theoretically possible that a sixty-month date could also have been arrived at by clerical error, consideration of an addi-

---

5. A minor possible variance exists in the maximum and minimum periods listed here depending on the retroactive applicability of changes in the parole guidelines regarding escape convictions. However, such variances do not impact the issues in this appeal, and our ruling should not be read to indicate that these precise parole eligibility periods are correct.

6. Again, a slight possible variance exists in the maximum and minimum periods listed here depending on the retroactive applicability of changes in the parole guidelines regarding escape convictions. Such variances do not impact the issues in this appeal, and our ruling should not be read to indicate that these precise periods are correct.

tional conviction, or by some other unknown method. However, the mere possibility that the parole calculation can be explained in a different manner does not defeat Petitioner's showing that the most obvious explanation for the sixty-month date is that the government breached its promise and considered the dismissed counts. The government could have rebutted Petitioner's explanation, but it offered absolutely no contrary evidence at the September 4, 1992 hearing to explain the sixty-month calculation. The government has also failed to present any information on appeal to explain the sixty-month date. Moreover, one of the conceivable alternative explanations—consideration of an additional conviction—is belied by the Parole Commission's explicit statement that it did not take into account allegations that Petitioner committed new drug offenses while out on bail, some of which appear to have been part of a pending Colorado prosecution of Petitioner. R.O.A. Vol. I at Tab 12, Exhibit 16. Therefore, we are left with the strong inference from Petitioner's evidence that the government utilized the dismissed counts to calculate a sixty-month date.

 The district court concluded that Petitioner failed to establish that the parole commission had utilized the dismissed counts to determine his parole eligibility date because the 1991 Notice of Action did not specifically mention the dismissed counts, and because Petitioner failed to present evidence that the commission used the dismissed counts. However, the district court appears to have required Petitioner to produce *direct* evidence that the parole commission utilized the dismissed counts. Petitioner could obviously not make such a showing given that the parole commission did not explicitly mention the dismissed counts in its Notice of Action. However, we hold that the "indirect" evidence introduced by Petitioner, coupled with the government's failure to rebut that evidence, satisfies Petitioner's burden to prove by a preponderance of the evidence that the government breached its plea bargain, even though he can identify no "smoking gun." Accordingly, we reverse the district court

and order a recalculation of Petitioner's parole eligibility.[7]

## C.

 Next, Petitioner claims the district court erred because it ruled that the government did not breach the plea agreement when federal customs agents mentioned the dismissed counts in affidavits prepared to obtain search warrants. We disagree.

In 1990, federal customs agents prepared seven affidavits to obtain search warrants for certain properties owned by Petitioner. The affidavits, each seventeen pages long, identically referenced the conduct underlying the dismissed counts of Petitioner's federal indictment in two short footnotes. Specifically, the footnotes described Petitioner's guilty pleas to two counts of a thirty-six count indictment that charged importation of 34,-460 pounds of marijuana, and characterized him as an individual "deeply involved in the importation and distribution of marijuana." The district court ruled that this brief mention of the dismissed counts merely described the precise terms of Petitioner's plea agreement and did not influence the magistrate to issue the warrants.

On appeal, Petitioner argues that the district court erred because it ruled that the government did not breach the plea agreement. The district court's analysis, Petitioner contends, contravenes the established principle that "it makes no difference whether the judge was (or was not) influenced by information divulged through the government's breach." *United States v. Foster*, 889 F.2d 1049, 1056 (11th Cir.1989) (citing *Santobello*, 404 U.S. at 262, 92 S.Ct. at 499); *see also Canada*, 960 F.2d at 271; *Hayes*, 946 F.2d at 233. Because it makes no difference whether the judge was influenced by the dismissed counts, Petitioner argues the government's mere mention of or reference to the dismissed counts of his federal indictment violates the no adverse effect term of the plea agreement.

We believe Petitioner's argument unreasonably misconstrues the essence of the plea

---

**7.** The government's breach of the plea agreement is not so substantial as to justify withdrawal of

Petitioner's guilty plea. *See Santobello*, 404 U.S. at 262–63, 92 S.Ct. at 499.

agreement. The government promised at the re-arraignment hearing that the dismissed counts "would have no adverse effect on the defendant." Significantly, the government did not promise that it would not mention, reference, or otherwise use the dismissed counts, nor did it promise that it would expunge the dismissed counts from its files. Rather, the government merely agreed that the dismissed counts would not *adversely* effect Petitioner. Petitioner, therefore, could not reasonably have interpreted the plea agreement to prohibit the government from ever mentioning the dismissed counts of his federal indictment.

Thus, Petitioner's argument that the government breaches the plea agreement by mentioning the dismissed counts regardless of whether the judge is influenced by them ignores the significance of the word "adverse" in the plea agreement. By the express terms of the agreement, the government breaches the plea agreement only when its use of the dismissed counts *adversely* effects Petitioner. The word "adverse," therefore, limits a breach of the plea agreement to those instances where Petitioner establishes a demonstrable adverse effect resulting from the government's use of the dismissed counts. Despite Petitioner's arguments otherwise, our inquiry does not turn on whether the magistrate judge was influenced by the references to the dismissed counts in the affidavits, but whether the references yielded adverse effects to Petitioner. Consequently, we hold that in the absence of demonstrable adverse effect to Petitioner attributable to the dismissed counts, the government does not breach the plea agreement when it references, mentions, or otherwise uses the dismissed counts.

Here, Petitioner has failed to establish that he suffered demonstrable adverse effects from the government's references to the dismissed counts in the affidavits. We conclude that the government did not breach the plea agreement by mentioning the dismissed counts in two footnotes appended to the seventeen page affidavits. The district court, therefore, did not err by ruling that the government did not violate the plea agreement by mentioning the dismissed conduct in the affidavits.

### D.

 Petitioner next contends that the district court erred by ruling that the government did not breach the plea agreement when it referred to the dismissed counts in a presentence report prepared to sentence him in an unrelated case. We disagree.

In 1990, the government prepared a presentence report to sentence Petitioner in federal court in Colorado for an offense unrelated to the instant case. In a summary paragraph, the presentence report described the conduct underlying the dismissed counts. Contrary to Petitioner's suggestions otherwise, the government did not refer to the dismissed counts or the underlying conduct as a basis to award criminal history points, or to otherwise increase his sentence. Rather, based on our review of the record, the government merely mentioned the dismissed counts in a manner that did not cause demonstrable adverse effect to Petitioner. Thus, we conclude the district court did not err by ruling that the government did not breach the plea agreement by referencing the dismissed counts in the presentence report.

### E.

Petitioner next maintains that the district court erred by ruling that the parole commission and the Bureau of Prisons did not breach the plea agreement by allegedly relying on the dismissed counts to support certain classification decisions. We reject these claims, but rely in part on different reasoning than that employed by the district court.

### 1.

 Petitioner first argues that the district court erred in ruling that the parole commission did not rely on the dismissed counts when it classified him as an original jurisdiction case. Specifically, Petitioner maintains that after he first litigated the parole commission's determination of his parole eligibility date in *Allen I*, the parole commission classified him as an original jur-

isdiction case pursuant to 28 C.F.R. § 2.17(b)(3) based on the conduct underlying the dismissed counts. The classification vests original jurisdiction to make primary parole decisions regarding Petitioner in the national commissioners in Washington instead of the local parole commission. *See generally* 28 C.F.R. § 2.17 (detailing original jurisdiction classification). Petitioner claims he suffers an adverse effect from this classification because his parole decisions are made on the national instead of the local level. Additionally, Petitioner claims he suffers an adverse effect because he can only appeal parole decisions to the National Board and is deprived of an intermediate appeal of adverse local decisions to a regional commissioner. The district court rejected Petitioner's claims, ruling that he failed to identify how the parole commission relied on the dismissed counts in assigning the original jurisdiction classification. We disagree, but nevertheless hold that Petitioner has not shown that use of the dismissed counts to assign him original jurisdiction classification has caused him any adverse effects so as to violate the plea bargain agreement.

 As a starting matter, we conclude that Petitioner has shown by a preponderance of the evidence that the parole commission effectively relied on the dismissed counts to assign him original jurisdiction classification. In its memorandum notice dated February 20, 1991, the parole commission classified Petitioner as an original jurisdiction case because of the "unusual attention given this case by the U.S. District Court for the District of Colorado" in *Allen I*. R.O.A. Vol. I at Tab 24, Exhibit 24 ¶ A. Parole regulations provide that the commission may designate a case as original jurisdiction where the prisoner has "received national or unusual attention." 28 C.F.R. § 2.17(b)(3). However, in the present case, the notoriety surrounding *Allen I* cannot be divorced from the counts dismissed from the original federal indictment. That is, *Allen I* itself was based on the government's improper consideration of the dismissed counts to determine Petitioner's parole eligibility, and any adverse effects that flowed from *Allen I* are causally linked to the use of those dismissed counts. Although a prisoner may be permis-

sibly designated as original jurisdiction because his or her case received notoriety, the notoriety cannot be created by improper government conduct in violation of a plea agreement. Thus, we conclude that the government cannot use the very litigation that it forced Petitioner to initiate to justify its current special treatment of Petitioner.

However, notwithstanding this potential violation of the plea bargain, Petitioner has not shown an actual breach of the plea agreement because he has not demonstrated that he suffered any "adverse effect" from the original jurisdiction classification. Petitioner maintains that he has been injured by this special classification because his parole decisions are decided by the far-off bureaucracy of the National Parole Board and because he cannot petition the regional parole commissioner before appealing to the National Board. However, Petitioner never identifies how these lost procedural avenues have impacted any of his parole determinations or materially injured him. Because Petitioner has failed to demonstrate that he has suffered any true adverse effect from the government's use of the dismissed counts to classify him as an original jurisdiction case, we affirm the district court's judgment on this issue.

### 2.

 Second, Petitioner contends that the district court erred in finding that the Bureau of Prisons did not rely on the dismissed counts to support an allegedly adverse classification within the federal prison system. As with the original jurisdiction parole classification issue, we agree that Petitioner has shown by a preponderance of the evidence that the Bureau of Prisons relied on the dismissed counts to classify him, but nevertheless conclude that Petitioner has failed to show that such a use of the dismissed counts adversely affected him so as to violate the plea agreement.

Again, Petitioner has failed to provide direct evidence that the Bureau of Prisons relied on the dismissed counts to assign Petitioner a sophisticated criminal activity ("SCA") classification in the central inmate

monitoring system ("CIMS"). However, he has provided strong indirect evidence, which the government has failed to rebut below or on appeal, that the government relied on the dismissed counts in classifying as an SCA inmate. In particular, at the evidentiary hearing before the magistrate, a case management coordinator from the federal penitentiary in Englewood, Colorado, Robert Buselt, testified that Petitioner was given an SCA designation because he was involved in a "sophisticated drug activity." R.O.A. Vol. II at 47. Buselt specifically testified that Petitioner was not SCA classified for other reasons, including that he was an informant, a threat to government officials, or a prison security threat. R.O.A. Vol. II at 54–56. Sophisticated drug activities are currently defined as conspiracies involving over $5 million, in which the inmate was one of the leaders. 28 C.F.R. § 524.72(b). Previously, conspiracies involving $1 million, and before that $500,000, were considered sophisticated. Yet Petitioner only pled guilty to drug charges involving $8,000. However, Petitioner explains that if the dismissed counts are also considered, the conspiracy involved $641,000 and would have justified an SCA classification.[8] As such, Petitioner offered sufficient evidence to infer that the government considered the dismissed counts in characterizing his crime as a sophisticated drug conspiracy.

The government could have rebutted this inference by presenting contrary evidence explaining how Petitioner was SCA classified without reference to the dismissed counts. However, the government presented no such evidence. Because Petitioner has provided an obvious explanation for the classification and the government has offered no alternative justification, we conclude that Petitioner has shown by a preponderance of the evidence that the government potentially breached the plea agreement by using the dismissed counts to determine his prison classification.

Nevertheless, we hold that the government did not breach the plea bargain because Petitioner has not shown that the SCA classification caused him any adverse effect or concrete injury. Petitioner complains that the CIMS SCA designation constituted a prohibited adverse effect because he had to obtain prior clearance from reviewing authorities before he could: (1) transfer to other facilities; (2) participate in community activities; (3) obtain temporary releases; (4) obtain work or study releases; (5) obtain furloughs; and (6) travel on escorted trips. See 28 C.F.R. § 524.76. However, Petitioner has not identified a single instance in which having to secure such clearance prevented him from receiving a benefit or participating in a program to which he would have otherwise been entitled. Accordingly, we hold that Petitioner has failed to show that he suffered an adverse effect because of the government's consideration of the dismissed counts in assigning his inmate classification, and affirm the district court's denial of relief on this ground.

## II.

■■■ Finally, Petitioner maintains the district court erred in interpreting the state plea agreement. Specifically, Petitioner argues the district court erred in finding that the state plea agreement did not prohibit the State of Texas from confining him in a state facility pursuant to his state sentence. We disagree.

We review the district court's interpretation of the terms of the state plea agreement for clear error. Floyd, 1 F.3d at 869. In exchange for Petitioner's guilty plea to the single charge filed against him in state court, the State of Texas promised in the plea agreement that it would "recommend that all confinement resulting from the State sentence be served in a federal correctional institution, concurrently with the federal sentence." Petitioner argues that under this language, the State of Texas may not require him to serve any portion of his state sentence in a state prison facility. Thus, Petitioner argues that the State of Texas breached the plea agreement when he was arrested and

---

8. Although the record on appeal is not entirely clear, it appears that Petitioner has been declassified because he no longer meets the definition for sophisticated drug activities. See R.O.A. Tab 24, Exhibit 25.

confined for three days in May 1983 pursuant to a Texas capias.[9]

The district court ruled that Petitioner unreasonably interpreted the plea agreement to preclude the State of Texas from ever requiring him to serve his state sentence in a state facility. Specifically, the district court rejected Petitioner's argument that under the state plea agreement, the State of Texas could not confine him at all if he was released from federal confinement before he served his entire state sentence.

We conclude the district court was not clearly erroneous in finding that the State of Texas preserved its right in the state plea agreement to imprison Petitioner for the balance of his state sentence if he was prematurely released from federal confinement. Under the plain language of the state plea agreement, the State of Texas merely agreed to *"recommend* that all confinement resulting from the state sentence be served in a federal correctional institution, concurrently with the federal sentence." (emphasis added). Despite Petitioner's arguments otherwise, the State of Texas did not promise that he would serve his entire state sentence in a federal facility. Additionally, nowhere in the state plea agreement does the State of Texas waive or forfeit the right to imprison Petitioner in a state facility to serve the unexpired portion of his sentence. Consequently, we reject Petitioner's interpretation of the state plea agreement as unreasonable. We conclude, therefore, that the district court was not clearly erroneous in finding that the state plea agreement did not prohibit the State of Texas from imprisoning Petitioner in a state facility to serve his state sentence.

## III.

In conclusion, we REVERSE the district court's ruling that the parole commission did not breach the plea agreement when it determined Petitioner was eligible for parole in sixty months and REMAND for recalculation of Petitioner's parole eligibility. In all other respects, we AFFIRM the decision of the district court.

BALDOCK, Circuit Judge, concurring in Parts I.E.1 and I.E.2:

I concur in this court's affirmance of the district court in Part I.E.1. However, I write separately because I believe the district court correctly found that Petitioner failed to prove by a preponderance of the evidence that the parole commission relied on the dismissed counts of his federal indictment when it classified him as an original jurisdiction case. I would therefore not reach this court's determination whether the original jurisdiction classification adversely effects Petitioner.

Petitioner argues that the district court erred in ruling that the parole commission did not rely on the dismissed counts when it classified him as an original jurisdiction case. Petitioner maintains that after he first litigated the parole commission's determination of his parole eligibility date in *Allen I*, the parole commission classified him as an original jurisdiction case pursuant to 28 C.F.R. § 2.17(b)(3) based on the conduct underlying the dismissed counts. The classification vests original jurisdiction to make primary parole decisions regarding Petitioner in the National Commissioners in Washington instead of the local parole commission. *See generally* 28 C.F.R. § 2.17 (detailing original jurisdiction classification).

The district court ruled that Petitioner failed to identify how the parole commission relied on the dismissed counts when it assigned the original jurisdiction classification. I agree. In its memorandum notice dated February 20, 1991, the parole commission classified Petitioner as an original jurisdiction case because of the "unusual attention given this case by the U.S. District Court for the District of Colorado" in *Allen I.* By classifying Petitioner on this basis, the parole commission merely recited a proper regulatory criterion to grant original jurisdiction over a particular case to the National Commissioners. *See* 28 C.F.R. § 2.17(b)(3) (parole commission may designate case as original

---

9. At the time of the arrest and detention, Petitioner was on appeal bond from federal custody

pending the outcome of *Allen III.*

jurisdiction where prisoner has "received national or unusual attention"). Thus, the parole commission classified Petitioner's case as original jurisdiction because he had successfully litigated against the parole commission in *Allen I,* not because of the conduct underlying the dismissed counts of his federal indictment. Consequently, I do not agree with this court's observation that the original jurisdiction classification was based on the dismissed counts because "the notoriety surrounding *Allen I* cannot be divorced from the counts dismissed from the original federal indictment."

In my opinion, Petitioner has failed to establish by a preponderance of the evidence that the parole commission relied on his dismissed counts when it assigned original jurisdiction to his case. *E.g., Hernandez,* 17 F.3d at 78. I would therefore not reach this court's determination whether Petitioner has failed to show any adverse effect from the original jurisdiction classification in breach of the plea agreement. However, I concur in this court's affirmance of the district court in Part I.E.1.

Next, I concur in this court's affirmance of the district court in Part I.E.2. I write separately, however, because I believe the district court correctly found that Petitioner failed to prove by a preponderance of the evidence that the Bureau of Prisons relied on the amount of currency involved in the dismissed counts of his federal indictment to support the CIMS SCA designation. I would therefore not reach this court's determination whether the CIMS SCA designation adversely effects Petitioner.

Petitioner does not identify or present any evidence in support of his claim that the Bureau of Prisons relied on the conduct underlying the dismissed counts to support the CIMS SCA classification. Instead, Petitioner concludes via a process of reverse deduction that the Bureau of Prisons necessarily based the CIMS SCA designation on the dismissed counts. In the absence of evidence showing that the Bureau of Prisons relied on the dismissed counts to support the CIMS SCA classification, I do not believe Petitioner has satisfied his burden of establishing facts that demonstrate a breach of the

plea agreement by a preponderance of the evidence. *See Hernandez,* 17 F.3d at 81 ("The defendant has the burden of proving the underlying facts that establish a breach by a preponderance of the evidence."). Unlike this court, I do not believe that the inference created by Petitioner's reverse deduction argument that the Bureau of Prisons relied on the dismissed counts to designate him CIMS SCA is sufficient to satisfy his evidentiary burden. In my view, Petitioner has failed to establish by a preponderance of the evidence that the Bureau of Prisons utilized his dismissed counts to assign him the CIMS SCA classification. I would therefore not reach the determination whether the CIMS SCA designation causes adverse effect to Petitioner. However, I concur in this court's affirmance of the district court in Part I.E.2.

EBEL, Circuit Judge, concurring:

I concur with the majority's disposition of Petitioner's claims in all respects. However, I write briefly to express disagreement with the rationale employed to reject Petitioner's claim based on his state plea agreement in Part II. The majority emphasizes that Texas officials promised only to "recommend" that all confinement resulting from the state sentence be served in a federal prison. I do not read the use of the word recommend as weakening Texas' promise, in effect, to make good faith efforts to ensure that Petitioner actually serve time only in a federal facility. However, notwithstanding that promise, I conclude that Texas preserved its right to imprison Petitioner for the balance of his state sentence if he were released from federal confinement before serving the duration of his state sentence.

Texas' promise that Petitioner serve his time in a federal facility was premised on the understanding that Petitioner would be serving his full concurrent federal sentence. The state sentence could no longer run concurrently with the federal sentence when the federal sentence was interrupted, and Petitioner could not, therefore, continue to serve his state sentence in a federal institution. Petitioner could not have reasonably understood that in such an instance, he would be

excused from serving the remainder of his state sentence altogether. For that reason, I would affirm the district court's finding that the state plea agreement did not prohibit Texas from imprisoning Petitioner in a state facility during the time that he was prematurely released from federal custody.

BALDOCK, Circuit Judge, dissenting in Part I.B:

I am unable to join Part I.B of this court's opinion ruling that Petitioner established by a preponderance of the evidence that the parole commission calculated his parole eligibility date based on the dismissed counts of his federal indictment. Purporting to analyze evidence, this court restates Petitioner's argument and concludes that a mere inference that the parole commission considered the dismissed counts of his federal indictment constitutes a preponderance of the evidence. Because I conclude that Petitioner has failed to support his argument that the parole commission considered the dismissed counts of his federal indictment with a preponderance of the evidence, I respectfully dissent.

The party who asserts the breach of a plea agreement has the burden of proving the underlying facts that establish a breach by a preponderance of the evidence. *Martin,* 25 F.3d at 217; *Hernandez,* 17 F.3d at 81; *Calabrese,* 645 F.2d at 1390. In order to obtain relief in the instant case, therefore, Petitioner must show by a preponderance of the evidence that the parole commission relied on the dismissed counts of his federal indictment when it determined he was eligible for parole in sixty months.

As the district court recognized, the parole commission did not mention Petitioner's dismissed counts in its 1991 Notice of Action setting his sixty-month parole eligibility. At the September 4, 1992 evidentiary hearing, Petitioner failed to present evidence demonstrating that the parole commission relied on the dismissed counts of his federal indictment when it calculated his parole eligibility date. Instead, Petitioner argues that via a reverse deduction inquiry the parole commission could not have reached the sixty-month

determination unless it did in fact rely on the dismissed counts.

Although the parole commission did not expressly mention the dismissed counts, Petitioner contends it implicitly based its sixty month parole determination on the 34,000 pounds of marijuana involved in the dismissed counts. Petitioner pled guilty to drug offenses involving 3300 pounds of marijuana. Under parole commission guidelines then in effect, Petitioner's offense characteristic classification was category five based on the 3300 pounds of marijuana. *See* Parole Commission Rules 28 C.F.R. §§ 2.1–2.65 (1989). With the salient factor score of 10 assigned by the parole commission, and addition of an unrelated escape conviction, Petitioner argues his parole guideline range was thirty-two to forty-eight months. In its March 1991 Notice of Action, however, the parole commission stated that Petitioner was eligible for parole in sixty months under the guidelines.

Petitioner contends that the parole commission determined he was eligible for parole in sixty months because it considered the 34,000 pounds of marijuana referenced in the dismissed counts of the federal indictment. Petitioner maintains that 34,000 pounds of marijuana yields an offense characteristic classification of category six, and when combined with his unrelated escape conviction and salient factor score of 10, the guideline range is forty-eight to sixty-two months. *See id.* Thus, Petitioner alleges the parole commission reached a parole eligibility determination of sixty months by calculating the guideline range for the 34,000 pounds of marijuana involved in the dismissed counts.

This court concludes that Petitioner's reverse deduction argument creates a strong inference that the government utilized the dismissed counts of his federal indictment to determine his parole eligibility. Further, this court holds that Petitioner's allegations satisfy his burden to prove by a preponderance of the evidence that the government breached the plea agreement. I disagree. Naked allegations do not constitute evidentiary facts. Petitioner's argument that consideration of the dismissed counts results in parole eligibility in forty-eight to sixty-two

months in itself does not constitute sufficient evidence to demonstrate a breach. Rather, his argument amounts to mere allegations that are not premised upon a factual preponderance.

While I agree that Petitioner has made a persuasive *argument* that the government used his dismissed counts to calculate his parole eligibility date, the record reveals he has failed to introduce any *evidence* showing the underlying facts that establish a breach by a preponderance. At most, Petitioner has shown that the parole commission incorrectly calculated his parole eligibility date. Although it is unclear how the parole commission calculated Petitioner's parole eligibility, an erroneous parole eligibility calculation in itself does not breach the plea agreement. Petitioner may initiate a separate action for a correct parole calculation under the applicable parole guidelines in the appropriate forum. An action alleging breach of the plea agreement, however, is not the proper action to challenge the parole determination unless Petitioner proves the calculation itself was based upon his dismissed counts. Because Petitioner has failed to make such a showing, I respectfully dissent from this court's ruling that Petitioner established by a preponderance of the evidence that the parole commission breached the plea agreement when it determined he was eligible for parole in sixty months. I would, therefore, affirm the district court in Part I.B.

McKAY, Circuit Judge, concurring in part and dissenting in part:

I concur with the majority opinion in all respects except one. In my opinion, the Petitioner's SCA classification constitutes a prohibited adverse effect because he must obtain prior clearances from reviewing authorities before he can participate in certain programs and receive certain benefits. Although it is true that he has not identified any particular instance where he has been denied any of these benefits, I do not believe actual denial is necessary to demonstrate an adverse effect. The mere fact that he has to seek permission and potentially could be denied or delayed something which he would otherwise be entitled to is enough, in my view, to constitute an adverse effect.