**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 30 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

HAROLD GLEN CLAYTON,

Defendant-Appellant.

No. 99-7034
(D.C. No. CR-98-25-S)
(E.D. Okla.)

---

**ORDER AND JUDGMEN** T[*]

---

Before **ANDERSON** , **BARRETT** , and **BRISCOE,** Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*]   This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant Harold Glen Clayton conditionally pled guilty pursuant to Fed. R. Crim. P. § 11(a)(2) to conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846, to money laundering conspiracy in violation of 18 U.S.C. § 1956(h), and to unlawful removal of vehicle identification numbers in violation of 18 U.S.C. § 511(a). Defendant claims the district court erred in denying his motions to suppress certain evidence and to suppress the testimony of certain witnesses as violative of 18 U.S.C. § 201(c)(2) (prohibiting bribery of witnesses). Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

## I. Facts

On April 15, 1998, deputies from the Hughes County, Oklahoma Sheriff's Office arrested defendant pursuant to an arrest warrant on a charge of racketeering. Deputies had observed defendant's car outside his business, the Sandy Bar Game Club. Four officers wearing bullet proof vests surrounded the premises. Two of the officers testified they were concerned for their safety in making the arrest because weapons had been involved in many of their earlier interactions with defendant and because defendant had threatened officers on earlier occasions. *See* R. Vol. VI, at 35, 52. One officer, Deputy Sutterfield, testified that while he was outside the club, he heard noises in the southeast

-2-

corner of the building which sounded like someone moving objects around.        *See id*. at 54-55.

The deputies entered the club into a hallway and then into a concession area, which one officer estimated to be approximately twenty-five to thirty-five feet wide and forty-five to fifty-five feet long.  The officers saw defendant and another man they did not recognize, a Mr. Blackman, in the concession area. Defendant was informed he was under arrest.  He was allowed to use the restroom, after which he was handcuffed in the hallway and escorted out of the building.  During this time, the other officers questioned Mr. Blackman and determined that he had no outstanding arrest warrants.  When questioned, Mr. Blackman said he did not know what was going on in the southeast corner of the concession area where noises had been heard.  Deputy Sutterfield testified that he walked over to that corner because he was concerned there could be something of danger there, that he observed an icebox in the corner and then observed a black gun case on the south side of the icebox.        *See id.*  at 57-59.  Deputy Sutterfield opened the gun case, which contained two firearms.  Deputy Sutterfield testified the arresting officer had just started to handcuff the defendant in the hallway during this time.  *See id* . at 60.  Deputy Sutterfield and the remaining officers left the club with Mr. Blackman approximately five minutes after the arresting officer left with the defendant.  Later that day, the deputies obtained a search warrant to

-3-

search the club for firearms based on their observation of the gun case and firearms during their search during the arrest. The search was conducted the next day, during which officers discovered evidence of other crimes, including those to which defendant ultimately pled guilty.

## II. Protective Sweep

Defendant claims that the district court erred in denying his motion to suppress the evidence seized during the search of the Club. We recently described our standard of review of a district court's denial of a motion to suppress evidence as follows:

> When reviewing a district court's denial of a motion to suppress, we consider the totality of the circumstances and view the evidence in a light most favorable to the government. We accept the district court's factual findings unless those findings are clearly erroneous. The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court. Keeping in mind that the burden is on the defendant to prove that the challenged seizure was illegal under the Fourth Amendment, the ultimate determination of reasonableness under the Fourth Amendment is a question of law reviewable de novo.

*United States v. Long*, 176 F.3d 1304, 1307 (10th Cir. 1999) (citations omitted), *cert. denied*, 1999 WL 669593 (U.S. Oct. 4, 1999) (No. 99-5944).

Defendant claims the evidence should have been suppressed as the fruit of an illegal search during his arrest, which he claims was in violation of the Fourth Amendment because he was already handcuffed and outside in the hallway when

-4-

Deputy Sutterfield searched the corner of the concession area. Defendant argues that since he was already arrested, the officers had no reason to fear for their safety and, therefore, no protective sweep was necessary.

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). Such a search is limited to a "cursory visual inspection of those places in which a person might be hiding." *Id*. It is constitutional if the officers had "a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ed] the officer in believing that the area swept harbored an individual posing a danger to the officer or others." *Id*. (citations and quotations omitted) (alteration in original).

Applying these principles, we conclude that the limited search of the concession area of the club did not violate the Fourth Amendment. Firearms had been involved in earlier police interactions with defendant and the defendant had made threats to officers on other occasions. An officer heard noises coming from the southeast corner of the club and testified that he was concerned something of danger to the officers could be in that corner and that other individuals besides defendant or Mr. Blackman could have been hiding behind the icebox. *See* R. Vol. VI, at 56-57, 73. These facts and the inferences drawn therefrom are

sufficient to establish that the officers had a reasonable belief that someone posing a danger to them might be in the corner of the room. Even though defendant was under arrest and in the hallway during the search, Deputy Sutterfield's reasonable concern that an accomplice might have been on the premises justified the protective sweep of the room. *See Buie*, 494 U.S. at 334 (stating the Court is "quite sure" that officers are permitted "to take reasonable steps to ensure their safety [both] after, and while making, the arrest"); *United States v. Tisdale*, 921 F.2d 1095, 1097 (10th Cir. 1990) ("[T]he danger which justifies a protective sweep comes from the possible presence of *other* armed and dangerous persons in the vicinity."). The search itself was "quick and limited." *Buie*, 494 U.S. at 327. Under these circumstances, we conclude that Deputy Sutterfield properly conducted a protective sweep of the Club in order to ensure the safety of the officers. *See id*. Such conduct does not constitute an unreasonable search under the Fourth Amendment. As a result, the district court properly denied the motion to suppress the evidence seized during the subsequent search of the Club pursuant to the search warrant.

III. *Singleton* Issue

Defendant next contends the district court erred in denying his motion to suppress the testimony of witnesses who may have been promised a reduced charge or prosecutorial immunity if they testified against him. Relying on *United States v. Singleton*, 144 F.3d 1343 (10th Cir. 1998), he claims any such promises were in violation of 18 U.S.C. § 201(c)(2), which prohibits bribery of witnesses. Defendant acknowledges that *Singleton* was vacated and later superceded on rehearing by this court's en banc ruling that § 201 does not prohibit a prosecutor, acting as an agent of the government, from making "a concession normally granted by the government in exchange for testimony." *United States v. Singleton*, 165 F.3d 1297, 1302 (10th Cir.) (en banc), *cert. denied*, 119 S. Ct. 2371 (1999). Defendant admits that he raised this claim merely to preserve this issue pending certiorari review of the *Singleton* case by the Supreme Court. The Court has now denied certiorari in *Singleton*, and we are bound by this court's en banc opinion.

IV. Breach of Plea Agreement

We granted defendant's motion for leave to file a supplement *pro se* brief even though he is represented by counsel. In this brief, defendant argues the government breached the terms of his plea agreement. He claims that it promised him that no sentencing enhancements would be applied to him, including any

adjustments to his base offense level or the determination of his criminal history category. The plea agreement was not in writing, although defendant's reservation of the right to appeal certain specified pretrial orders was in writing, as required by Fed. R. Crim. P. 11(a)(2).

Whether the government violated a plea agreement is a question of law that this court reviews de novo. *See United States v. Brye*, 146 F.3d 1207, 1209 (10th Cir. 1998). The terms of the plea agreement were presented in court in the defendant's presence. Defendant's counsel stated that the government agreed only to dismiss certain charges in exchange for defendant's conditional guilty plea and that there were no other promises. *See* Appellee's Suppl. Br., Ex. 2, at 32-33. Defendant agreed to this description of the plea agreement, and agreed that the government had not "promised, suggested or predicted" that he would "receive a lighter sentence or probation or any other form of leniency" if he pled guilty. *Id*. at 31, 33. In his objections to the presentence report, defendant did not claim that the government had breached any terms of the plea agreement with respect to sentencing. Thus, defendant has failed to present any evidence indicating that the government breached the terms of the plea agreement. *See Allen v. Hadden*, 57 F.3d 1529, 1534 (10th Cir. 1995) ("[T]he party who asserts a breach of a plea agreement has the burden of proving the underlying facts that establish a breach by a preponderance of the evidence.").

The judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.

Entered for the Court


Stephen H. Anderson
Circuit Judge